MICHAEL McQUIGAN, Respondent, *v.* THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Appellant.

The Supreme Court has no inherent power and, in the absence of a statute conferring the right, may not, in advance of the trial of an action for personal injuries, compel the plaintiff, on the application of the defendant, to submit to an examination of his person by surgeons appointed by the court, with a view to enable them to testify on the trial as to the existence or extent of the alleged injury.

*Walsh* v. *Sayre* (52 How. Pr. 334), overruled.

*Schroeder* v. *C., R. I. & P. R. Co.* (47 Ia. 375), disapproved.

*Briggs* v. *Morgan* (2 Hagg. Cons. Ct. 324); *Devanbagh* v. *Devanbagh* (5 Paige, 554); *Newell* v. *Newell* (9 id. 25), distinguished.

(Argued October 19, 1891; decided December 1, 1891.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made April 28, 1891, which affirmed an order of the Special Term denying a motion by defendant for an order directing the plaintiff, in an action for personal injuries, to submit to a physical examination by surgeons to be appointed by the court, and for the appointment of a receiver, under whose direction such examination should take place.

*Louis Marshall* and *Robert T. Turner* for appellant.    The orders of the Special and General Terms being based on a denial of power, are appealable. (*Tilton* v. *Beecher*, 59 N. Y. 176 ; *Eq. L. Assn.* v. *Stevens*, 63 id. 341 ; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 92 id. 383.)  The court erred in holding it had not the power or authority to grant an order to compel a personal examination of the plaintiff. (*Newman* v. *T. A. R. R. Co.*, 18 J. & S. 412 ; *Roberts* v. *O. & L. C. R. R. Co.*, 29 Hun, 154 ; *Devanbagh* v. *Devanbagh*, 5 Paige, 553 ; *Newell* v. *Newell*, 9 id. 25 ; *Lawrence* v. *Ocean Ins. Co.*, 11 Johns. 245 ; *Jackson* v. *Jones*, 3 Cow. 17 ; *Brush* v. *Gibbon*, Id. 18 ; *Wallis* v. *Murray*, 4 id. 399 ; *Schroeder* v. *C., R. I. & C. R. Co.*, 47 Ia. 375 ; *M. & M. T. Co.* v. *Baily*, 37 Ohio St. 104 ; *White* v. *M. C. R. R. Co.*, 61 Wis. 536 ; *State* v. *Ah Chuey*, 14 Nev. 79 ; *Hatfield* v. *S. P. & D. R. R. Co.*, 22 N. W. Rep. 176 ; *State* v. *Graham*, 74 N. C. 646 ; *Walker* v. *State*, 15 C. L. J. 2, 207 ; *S. C. & C. R. R. Co.* v. *Finlayson*, 16 Neb. 578 ; *Kinney* v. *City of Springfield*, 35 Mo. App. 97 ; *City of Galesburg* v. *Benedict*, 22 Ill. App. 111 ; *Walsh* v. *Sayre*, 52 How. Pr. 334.)

*Andrew Hamilton* for respondent.    There is no authority to compel a plaintiff in a case of this nature to exhibit his person for examination by his adversaries. (*Newman* v. *T. A. R. R. Co.*, 18 J. & S. 412 ; *Roberts* v. *O. R. R. Co.*, 29 Hun, 154 ; *Elfers* v. *Woolley*, 116 N. Y. 294, 296 ; *McSwyny* v. *B. R. R. Co.*, 27 N. Y. S. R. 363 ; *U. P. R. Co.* v. *Botsford*, 141 U. S. 250.)

ANDREWS, J.    The sole question presented by this record is whether the Supreme Court has power in advance of the trial of an action for a personal and physical injury to compel the plaintiff on an application made in behalf of the defendant to submit to a surgical examination of his person by surgeons appointed by the court with a view of enabling them to testify on the trial as to the existence and extent of the alleged injury. The question is not new in the courts, although so far as we

know it was first presented in 1868 before a judge of the New York Superior Court at Special Term in the case of *Walsh* v. *Sayre* (52 How. Pr. 334), who affirmed the existence of the power. The contrary was held by the General Term of the third department in *Roberts* v. *Ogdensburgh & Lake Champlain Railroad Co.* (29 Hun, 154). In 1877 the Supreme Court of Iowa in the case of *Schroeder* v. *C., R. I. & P. R. Co.* (47 Iowa, 375), sustained the doctrine that the court had an inherent jurisdiction to grant a compulsory order that the plaintiff submit to such examination, and this decision has been followed by the courts of several of the western and southern states, and in others the power has been denied. The same question was considered in the United States Supreme Court in the recent case of *Union Pacific Railroad Company* v. *Botsford* (141 U. S. 250), and the court (two judges dissenting) decided adversely to the claim that the court had power to compel such examination. The opinions of the several courts which have passed upon the question present very fully the considerations bearing upon it. We concur in the view taken by the Supreme Court of this state and the Supreme Court of the United States, and we can add very little to the full discussion to be found in the opinions of those courts.

The powers of courts are either statutory or those which appertain to them by force of the common law, or they are partly statutory and partly derived from immemorial usage, which latter constitutes their inherent jurisdiction. They are organized for the protection of public and private rights and the enforcement of remedies. Presumptively, therefore, whatever judicial procedure is essential to enable courts to exercise their function is authorized. The maxim that there is no right without a remedy, justified the courts in the earlier periods of the common law in inventing writs and modes of procedure adapted to present for adjudication in proper form every question of judicial cognizance. The powers and jurisdiction of the courts of common law and chancery in England are to be found in the English statutes and in the rules, pre-

cedents, decisions and procedure of the courts. The power which the courts actually exercised, supplemented by statutory powers, constitutes in a general sense their jurisdiction.

Upon the organization of the state government, our courts succeeded to the powers theretofore exercised by the courts of law and chancery in England, so far as they were applicable to our situation. It is a significant fact that not a trace can be found in the decisions of the common-law courts of England, either before or since the Revolution, of the exercise of the power to compel a party to a personal action to submit his person to examination at the instance of the other party. If the power existed it is difficult to suppose that it would not have been frequently invoked. Actions for assault and battery, for injuries arising from negligence, and generally for personal torts, were among the most common known to the law and yet, so far as we can discover, in no case was it supposed or claimed that the court was armed with this jurisdiction. The non-exercise of a power is not conclusive against its existence, but it is strange if the power in question existed, it should have been unused for centuries and never have been called into activity. In two cases cited by Justice GRAY in his opinion in *Union Pacific Railway Co.* v. *Botsford (supra)*, the Court of Common Bench, in England, refused an order for the inspection of a building, on the application of the plaintiff in an action for work and labor performed by him thereon, on the ground of want of power. (*Newham* v. *Tate*, 1 Arnold, 244; *Turquand* v. *Strand Union*, 8 Dow. Pr. 201.) These cases tend to negative the existence of the power in the English courts claimed for our courts in the case at bar. The only authority in the English common-law courts in any degree analogous is found in the power which the courts of England have occasionally, though rarely exercised, to issue on the application of apparent heirs the writ *de ventre inspiciendo*, to compel a widow, claiming to be with child by her deceased husband, to submit her person to examination. The practice in England is *sui generis*, and has never been adopted here. It may have originated in the peculiar favor shown to heirs

by the law of England, but whatever its origin, it seems repug-
nant to common right, and the fact that in this instance only
have the courts of England exercised the power to compel the
examination of the person in a civil proceeding, tends to show
that the power is not there regarded as general, but special
and peculiar, and limited to the particular case.    The doc-
trine of the cases in Chancery (*Briggs* v. *Morgan*, 2 Hagg.
Cons. Ct. 324; *Devanbagh* v. *Devanbagh*, 5 Pai. 554;
*Newell* v. *Newell*, 9 id. 25), that in an action to procure a
decree of nullity of marriage on the ground of impotence or
sexual incapacity, the chancellor may compel the defendant to
submit to a surgical examination, is a graft from the civil and
common law, and, as has been said, "rests upon the interest
which the public, as well as the parties, have in the question
of upholding or dissolving the marriage state, and upon the
necessity of such evidence to enable the court to exercise its
jurisdiction." (GRAY, J., in *Union Pacific Railway Co.* v.
*Bottsford, supra.*)

When we examine the history of the power of common-law
courts to compel the production and inspection of books and
papers in possession of the opposite party in a civil action, we
find that originally the courts disclaimed any power in the
matter, and the remedy by bill of discovery was the only
resource of the party desiring such discovery.    Finally, the
common-law courts assumed a limited equitable jurisdiction
over the subject, and in addition to the rule that a party plead-
ing a deed should make profert of the instrument which
enabled the other party to demand oyer, the courts by order
compelled a party who in his pleading relied upon a written
instrument, not a deed, to give inspection to the other party, if
required, and so in other special cases.    The courts in this
state, prior to any statute, exercised a limited equitable
jurisdiction of the same character.    (*Lawrence* v. *Ocean
Ins. Co.*, 11 Jo. 245; *Denslow* v. *Fowler*, 2 Cow. 592,
note.)    But this limited jurisdiction was exercised sparingly
and with hesitation, and it was not until statutes were
enacted in England and in this state, conferring upon com-

mon-law courts the same power to compel the discovery
and inspection of books and papers, which was exercised by
courts of chancery on bills of discovery, that courts of com-
mon law claimed or exercised full power over the subject.
(St. 14 and 15 Vict. chap. 99; St. 17 and 18 Vict. chap. 125;
Rev. St. pg. 199, § 21.) The limited jurisdiction exercised by
these courts before the statute, was in the nature of a usurpa-
tion, and, so far as we can discover, it was never considered
that they possessed an inherent power in aid of justice to
grant relief in cases outside of the narrow limit mentioned.
The power to compel an inspection of books and papers rele-
vant to the controversy, in possession of either party, is of a
similar nature to that invoked in the present case, and if the
inherent power of the court did not extend to the one case, it
is difficult to suppose that it embraced the other.

The power to compel a party to submit to an examination
of his person has never been conferred by any statute. The
provisions of the Revised Statutes authorizing the court to
compel the production of books or papers have been re-en-
acted in the Codes of Procedure. The statutes also contain
specific provisions for the examination of a party on oath before
trial, at the instance of the other party. The omission in these
statutes of any reference to the power now under consideration,
is quite significant. We cannot say that the exercise of the
power claimed might not in some cases promote justice and pre-
vent fraud. On the other hand, unless carefully guarded, it
would be subject to grave objections. But we have to deal only
with the question of the power of the courts, in the absence
of any legislation. It is very clear that the power is not a
part of the recognized and customary jurisdiction of courts
of law or equity. The doctrine that courts have an inherent
jurisdiction to mould the proceedings to meet new con-
ditions and exigencies, is true, but in a limited sense. They
cannot, under cover of procedure or to accomplish justice in a
particular case, invade recognized rights of person or property.
No court, we suppose, can abrogate an established rule of evi-
dence, as for example, the rule that hearsay evidence is inad-

missible, or the rule of the common law that parties shall not be witnesses, or that interest disqualifies. They may apply existing rules to new circumstances. Nor is it, we conceive, within the power of the court to create remedies unknown to the common law, or institute a procedure not according to the course of the common law. It is most important that courts should proceed under the sanction of an orderly and regulated jurisdiction, and that as little as possible should be left to the discretion of a judge. The exercise by the court of the power now invoked, as has been shown, is not sanctioned by any usage in the courts of England or of this state. Its existence is not indispensable to the due administration of justice. Its exercise depending on the discretion of the judge, would be subject to great abuse. We think the assumption by the court of this jurisdiction, in the absence of statute authority, would be an arbitrary extension of its powers. It is a just inference that an alleged power which has lain dormant during the whole period of English jurisprudence, and never attempted to be exercised in America until within a very recent period, never in fact had any existence.

We have purposely omitted to repeat the views and authorities upon this question, set forth in the opinions in *Roberts* v. *Ogdensburgh & L. C. R. R. Co.*, and in *Union Pacific Railway Co.* v. *Bottsford*, and we refer to those opinions for a fuller discussion of the grounds upon which the denial of the power claimed proceeds.

The order should be affirmed.

All concur.

Order affirmed.