### BURTON, LINGO & Co. v. MRS. M. O'NIELL.
### No. 577.

1. **Libel — Bad Debt Collecting Agency Letters.** — Letters sent in open envelopes endorsed ·· Bad Debt Collecting Agency," which are read before reaching their destination, and which state among other things that the correctness of the claim against the addressee is guaranteed, that if she desires to maintain a reputation for fair dealing and honesty she must pay the claim at once, and that a list is furnished all merchants of those who will not pay their debts, is libellous per se, and special damages need not be alleged in an action thereon.

2. **Same—Proof of Publication.**—The evidence is sufficient to connect defendants with the publication of letters to plaintiff sent in open envelopes by a "bad debt collecting agency," where it shows that the claim mentioned in the letter was a claim by defendants on which they were suing while the letters were being sent out, and that they were subscribers to the agency and had given their bookkeeper general instructions to send out such notices, and knew the business methods of the agency.

3. **Same—Remarks of Counsel.**—In a suit for libel in sending out open letters through a "bad debt collecting agency" of Chicago, remarks of plaintiff's counsel that the jury should give a verdict that would teach men when they have debts to collect to go into the courts at home where there is an honest judge and jury, and not try to collect them by sending such scandalous libels to a widow woman through a nameless agency at Chicago, are justifiable.

APPEAL from Tarrant. Tried below before Hon. R. E. BECKHAM.

*Green & Humphries*, for appellants.—The letters are not of themselves libellous, and special damages should have been alleged. Newell on Defamation, etc., 376.

*Byron Johnson*, for appellee.—The circular letters were per se libellous. Odgers on Libel, 21, 22; Muetze v. Tuteur, 20 Am. St. Rep., 115; Mc-

Allister v. Detroit, etc., 15 Am. St. Rep., 318; Bradstreet Co. v. Gill, 72 Texas, 115; Railway v. Richmond, 73 Texas, 568; Smith v. The State, 32 Texas, 594.

TARLTON, CHIEF JUSTICE.—The appellee recovered from the appellants the sum of $600 in this action, which is for libel. The verdict of the jury requires findings of fact as follows:

The plaintiff, Mrs. O'Niell, was during the years 1890 and 1891 a widow with several children, engaged in the business of keeping a boarding house in Fort Worth, Texas. The appellants were a mercantile firm doing business in that city.

Mrs. O'Niell was indebted to one C. A. Hall; the latter owed the appellants, Burton, Lingo & Co., the sum of $35.18, besides interest. The appellants claimed that Hall had given them an order on Mrs. O'Niell, which she had verbally accepted. This fact, however, of verbal acceptance she denied. As a consequence the appellants instituted suit against her in a Justice Court. In this suit she prevailed, as well in the Justice Court as in the County Court of Tarrant County, to which it was appealed.

Pending this litigation, which originated on October 21, 1890, and ended January 31, 1891, one Nash sued Hall, and caused the issuance of a writ of garnishment upon Mrs. O'Niell as garnishee. On a judgment obtained by Nash against her as such garnishee, she paid into court the money which she owed Hall. She was not indebted to the appellants.

In the spring of 1890 the appellants became members of an association having an office in Chicago, known as the "Sprague Bad Debt Collecting Association." They were awarded a membership in this association in consideration of $10 paid as an initiation fee. They were furnished by this association with certain notices and circulars, to be used in the enforcement of the collection of claims.

Pending the litigation against her, Mrs. O'Niell received through the mail the following communications:

"OFFICE OF SPRAGUE'S BAD DEBT COLLECTING AGENCY.
"Branch Offices in all Large Cities.   19–38.
"CHICAGO, January 12, 1891.

"Mrs. O'Niell:

"A claim has been reported to us of $36.99, owed by you to Burton, Lingo & Co., of Fort Worth, Texas, who is a subscriber to this agency. The party has guaranteed the correctness of this account, and demand that it be paid at once. Give it your immediate attention, and do not compel us to proceed further. You must appreciate the kindness shown you by this party in extending credit, and you certainly have too much pride to allow yourself to be classed as 'slow pay' by all business men.

Call on or write the party to whom this account is due, and have them notify us at once what arrangements you have made for a settlement. Your immediate attention will stop further proceedings.

" Respectfully,

"SPRAGUE'S BAD DEBT COLLECTING AGENCY.

"P. S.—A record of all persons who do not pay their bills is kept for the protection of business men. All business and professional men are subscribers to the agency, and every subscriber has access to this record of delinquents. Credit is refused to persons whose names are reported. Protect your credit by settling this amount within ten days. If this account is not correct, notify the above named party who reported your name. Do not correspond with us, but pay the person to whom the bill is due."

"SPRAGUE'S BAD DEBT COLLECTING AGENCY,

" CHICAGO, January 31, 1891.

" (Agency's Fourth Letter.)

*"Mrs. O'Niell*:

" We find the account of which we notified you sometime ago is still unsettled. You may need credit again sometime, but as long as your account remains in this very unsatisfactory condition, it will be impossible for you to obtain it. If you desire to maintain a reputation for honesty and fair dealing, and a good credit with the merchants in your locality, you will adjust the claim at once. Call on or write the party to whom the account is due, and make some kind of settlement immediately. If you will pay part of it and make some arrangement for the balance, we will not crowd you for awhile. Have the party to whom the bill is due write us at once, stating what arrangements you have made. Your prompt settlement will stop our further proceedings.

" Very respectfully,

"SPRAGUE'S BAD DEBT COLLECTING AGENCY.

" P. S.—Should you positively refuse to try to make any arrangement for the liquidation of this claim, we will, at the creditor's request, advertise the same for sale in the newspapers in that county, as well as to send you a statement regularly until the matter is settled. This agency keeps a record of all persons who are reported as delinquent debtors. This record is for the good and protection as well as a guide for business men in extending credit, and contains only the names of those who do not try to meet their obligations. Business men are advised of new names of delinquents that are placed on record. No one can afford to be reported as delinquent. Do not correspond with us, but settle this matter with the party to whom the account is due, whose name was given in our former letter."

These letters were enclosed in open envelopes, endorsed either "Sprague's Bad Debt Collecting Agency, Chicago," or "Sprague's Collecting Agency."

They were sent by the authority of the appellants, and before reaching the hands of the appellee they were read by several persons.

*Opinion.*—The general demurrer to the petition was properly overruled. The letters in question, which were set out in the petition, were libellous per se. They naturally impute dishonesty to the appellee; they immediately tend to detract from her reputation for integrity and fair dealing. It was not necessary, therefore, as appellants contend, that special damages should be alleged. Odgers on Libel and Slander, 291; Muetze v. Tuteur, 20 Am. St. Rep., 115; McAllister v. Free Press Co., 15 Am. St. Rep., 348; Bradstreet Co. v. Gill, 72 Texas, 115.

Our conclusions of fact indicate that we are unable to concur with appellants in their contention that the letters in question were inadmissible in evidence, because there was no testimony connecting the defendants with their publication. Thus the witness Tevis testifies, that he heard Mr. Burton, who was supervisor of the business of the firm, instruct Mr. Menifee, their bookkeeper and manager of their collections and sales, to send out notices of the character mentioned; that the witness personally knew that names were being sent out by Burton, Lingo & Co. to Sprague's Bad Debt Collecting Agency at Chicago. The witness George Wray testified, that in 1891 he saw blank circulars of the Sprague Bad Debt Collecting Agency in the desk of appellant's bookkeeper at their office, the circulars being similar to the letter of January 31, 1891.

The testimony of the witness Mr. Burton, managing partner of the defendants' firm, indicates that the firm began their connection with the collecting agency in the spring of 1890, and continued it until the spring of 1891, and that while he did not direct the sending of the particular circulars in question to Mrs. O'Niell, he yet does not contradict the statement of the witness Tevis with reference to the instructions given by him to the bookkeeper, Menifee; and he further states that he does not know how the name of Mrs. O'Niell reached the Sprague association, unless it was furnished by himself or some member of his firm, or by his bookkeeper. He further states, that under the arrangement between his firm and the Sprague association, the "agency were to send letters to the parties whose accounts were sent to them in doing this collecting," and that at the time that he entered into the arrangement with the agency their representative explained to him their system and work.

It will also be noted that these circulars were sent to the appellee during the pendency of the litigation for the collection of the claim, and that they ceased with that litigation.

The bookkeeper, Menifee, was not called upon to testify; and if, as is

probable, the name of the appellee was by him furnished to the collecting agency, we think that the evidence justifies the conclusion that in thus acting he was within the general scope of his authority arising out of the instructions given him by his superior, Mr. Burton.

It appears that the appellee's counsel, in addressing the jury, used the following language: "You should bring in a verdict in such an amount as will teach men that when they have debts to collect they should go into the courts of their own county, where there is an honest judge and an honest jury, and not try to collect their claims by sending to a widow woman such scandalous libels through a nameless agency at Chicago." This language was used over the protest of appellants' counsel that it was unauthorized by the pleadings and the evidence, as there was no claim in the petition for exemplary damages. Without reference to the question of punitive damages, we think that the language was justified by the character of the cause of action relied upon by the plaintiff, and by the testimony which was introduced in support of it.

The judgment is affirmed.

*Affirmed.*

Delivered March 21, 1894.