LAFAYETTE COLE, Respondent, *v.* THE FALL BROOK COAL COMPANY, Appellant.

*Injuries resulting from negligence — statement of counsel to the jury as to the result of a former trial — medical experts — hypothetical questions — physical examination of plaintiff, not newly-discovered evidence — effect of a former recovery.*

In an action brought to recover damages for personal injuries alleged to have resulted from the negligence of the defendant, it is improper for the plaintiff's counsel to state to the jury that upon a former trial the plaintiff recovered $8,000; but such error is cured where the court explicitly directs the jury to disregard the statement.

The consequences of an injury are to be determined by the jury, but the symptoms which may aid the jury in deciding what the consequences are may properly be testified to by a qualified expert.

Where a full hypothetical statement of the facts relative to any injury and its apparent results is read to a medical expert, he may properly answer a question put to him by the plaintiff's counsel in this form : " Taking all these symptoms into consideration, are they the natural and ordinary symptoms that would flow from an accident of this character ? "

Prior to the amendments made in 1893 and 1894 to section 873 of the Code of Civil Procedure, the court had no power to compel a plaintiff who had suffered personal injuries to submit to a physical examination either before or upon the trial of the action, at the instance of the defendant, or in default thereof to have his evidence stricken out.

Where a statutory enactment permitting a physical examination takes effect after the trial of an action, but before the entry of judgment, the evidence which might have been produced under the new enactment cannot be treated as newly-discovered evidence and affords no reason for the granting of a new trial on that ground.

An appellate tribunal in deciding the question whether there is evidence to sustain a verdict may properly give weight to the fact that the defendant's motion for a new trial was denied and that on former trials two juries had found in favor of the plaintiff.

APPEAL by the defendant, The Fall Brook Coal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 19th day of November, 1894, upon the verdict of a jury rendered after a trial at the Steuben Circuit, and also from an order made at the Ontario Special Term and entered in the office of the clerk of the county of Steuben on the 19th day of November, 1894, denying a motion for a new trial made on a case containing exceptions and also denying

such motion made upon a certain affidavit alleging misconduct on the part of the plaintiff's counsel during the trial.

*Gabriel L. Smith,* for the appellant.

*Charles Marvin,* for the respondent.

WERNER, J.:

The plaintiff was on the 9th day of November, 1887, employed by the defendant as a brakeman. On that day, while engaged in coupling cars, he was caught between the rear end of the fender and the front end of a gondola car, and sustained serious injuries. The alleged negligence of the defendant, upon which this action is brought, consisted in the use of a car from which the left-hand bumper was gone, thus permitting the cars between which plaintiff was required to go in making couplings to come so closely together as to crush him between the sills. The condition of the car in question, the manner in which the accident occurred and the nature and extent of plaintiff's alleged injuries were all contested questions submitted to the jury upon conflicting testimony.

The defendant moved for a new trial upon a case and exceptions, and upon an affidavit alleging misconduct on the part of plaintiff's counsel during the trial by which defendant's rights were prejudiced. The motion was denied.

Before proceeding to consider the exceptions upon which the appellant relies for a reversal of the judgment herein, we will briefly discuss the alleged misconduct of plaintiff's counsel.

It consisted in a statement to the jury by plaintiff's counsel in summing up that upon a former trial the plaintiff had recovered a verdict for $8,000. This incident was brought to the attention of the court by a note from defendant's counsel. The presiding justice, in the course of his charge to the jury, called attention to the matter in the following language: "The fact has crept out here, improperly, that upon a former trial the plaintiff recovered a verdict, and the amount of that verdict has been stated to you; but the fact that the plaintiff recovered in a former trial of this action is no reason why he should recover in this action. The fact that he recovered a certain amount on the former trial has nothing to do with the amount he should recover upon this trial, if he recovers at

all. You are aware, I take it, that the evidence which has been furnished on either side of this trial varies very materially from that which was furnished upon the former trial. Witnesses have been sworn here who were not sworn there; testimony has been given here which was not given then; and you are to dispose of this case upon the evidence which has been furnished here, and upon that evidence alone, and not upon any evidence furnished on the former trial, save where that evidence has been read before you with a view of contradicting evidence which has been given here."

The statement of plaintiff's counsel as to the action of the jury upon the former trial was manifestly improper, but it was eliminated from the case by the very explicit charge of the court, and the error which might have been committed in permitting it to pass unchallenged was thus prevented.

In *Chesebrough* v. *Conover* (140 N. Y. 388) this identical question was discussed in the following language: "Where a case has been once tried, it is not generally possible to keep from the jury the result of the former trial, and it would be an embarrassing and mischievous rule to lay down that if such result be brought out by statement or evidence a fatal and incurable error has been committed; and that, although the jury may be instructed to wholly disregard it, yet the vice is not eliminated and the judgment upon the second trial is necessarily to be reversed. * * * It is also like the case where upon the trial of an action the trial judge erroneously receives objectionable and damaging evidence, which he subsequently strikes out and directs the jury to disregard. In such cases we have uniformly held that the vice is eliminated, and that theoretically, at least, the erroneous evidence found no lodgment in the minds of the jury."

To the same effect is *Brusie* v. *Peck Bros. & Co.* (42 N. Y. St. Repr. 801).

Defendant contends that error was committed in permitting physicians, who were called as experts, to answer certain hypothetical questions, the length of which precludes their reproduction in full here. An examination of these questions convinces us that none of the rulings of the court upon this subject transcended the now well-settled rules relating to the subject of expert testimony in actions for damages for personal injuries.

The plaintiff and other witnesses had testified as to the plaintiff's condition, and upon the assumption that plaintiff's evidence was to be taken as true, certain facts bearing upon his condition were established. Whether this evidence was to believed or not, and whether plaintiff's condition was such as he claims, were questions for the determination of the jury, and it was plaintiff's right to fortify and corroborate that evidence by all proper means.

Dr. Pratt, one of plaintiff's experts, was asked to " describe the symptoms which would ordinarily and necessarily accompany an injury such as you found this man suffering under."

Dr. Webb, another of plaintiff's experts, after hearing the hypothetical statement of facts which plaintiff claimed to have established, was asked this question : " Taking all these symptoms into consideration, are they the natural and ordinary symptoms that would flow from an accident of this character ? "

Dr. Jonas Jacobs was asked : " Are you able to state from your observation of cases of this character, founded upon the information which you obtained from the examination of this man, what some of the ordinary and usual symptoms are accompanying an injury of this character ? "

Dr. Henry Flood was asked : " State what are the ordinary and usual symptoms from an injury in that locality — from such an injury as you found this patient suffering from."

The rule is too firmly established to require the citation of authorities that in actions for personal injuries physicians may be called as experts to testify to matters involving learning and skill in the science of medicine and surgery, which bear upon the nature and extent of the injuries complained of, and the only question we are called upon to determine is whether the questions were proper in form, and the answers thereto were within the scope of the inquiry, as to which expert testimony was properly admissible.

Did these questions call for conclusions of fact not embracing subjects of science or skill peculiarly within the knowledge of the witnesses to whom they were addressed ?

The answer to this inquiry may be found in the language of this court in *Schwander* v. *Birge* (46 Hun, 66) : " The governing rule deduced from the cases permitting the opinions of witnesses is that the subject must be one of science or skill, or one of which

observation and experience have given the opportunity and means of knowledge which exists *in reasons* rather than *descriptive facts*, and, therefore, cannot be intelligently communicated to others not familiar with the subject so as to possess them with a full understanding of it."

The forceful application of this language to the case at bar can best be illustrated by a brief consideration of the facts of the case in which it was employed.

Schwander's intestate was killed in a fire at Birge's factory where he was employed. It was sought to charge defendants with negligence in failing to provide suitable means of escape from the building for their employees. Defendants' superintendent, after having testified to the existing conditions, was asked the question : " Was that, in your judgment, a proper and sufficient mode of access and egress from the building under any circumstances ? "

This was a question requiring the witness to draw a conclusion from a purely descriptive fact, and, in permitting him to answer, the province of the jury was clearly invaded.

The present case is one, however, in which the learning and skill of witnesses, based upon their knowledge and experience, enabled them to testify to matters not within the knowledge of ordinary men, and not capable of elucidation by a mere statement of facts showing the manner of the accident and the plaintiff's present condition.

Let us suppose that the plaintiff's case had rested solely upon the evidence of himself and other non-expert witnesses. . The jury might have concluded that plaintiff's condition resulted from the accident. But this conclusion, instead of being based upon evidence showing with reasonable certainty that cause and effect were considered in their logical relation to each other, would merely have given the jury an opportunity to supply by surmise and conjecture that which should have been furnished by legal evidence.

It is necessary and proper for the plaintiff to show that his condition at the trial, as well as his probable future condition, was such as might, and probably would, result from such an accident as had been described, and that no intervening cause was responsible therefor.

The questions addressed to the plaintiff's experts herein were not open to the objections which resulted in the reversal of *Page*

v. *Mayor, etc.* (57 Hun, 124). In that case the physician had heard only a portion of the evidence of the plaintiff. He was asked the following question : " Take such a fall as he describes here, resulting from a collision of two cars, and of the symptoms following that fall, he having theretofore been a sound and healthy man, can you state with reasonable certainty that the consequences that have flowed are natural and usual ? " That question was not only based upon an incomplete hypothesis, but it called upon the witness to say that the " consequences that have flowed are natural and usual."

There is a material difference between that question and those here under consideration. In that case the " consequences " flowing from the accident are testified to ; in this case the evidence deals with symptoms which are " natural and ordinary " in connection with the injury stated. The " consequences " of an injury are to be determined by the jury ; but the symptoms which may aid the jury in deciding what the consequences are may properly be testified to by a qualified expert. But, even upon the assumption that there is no essential difference between the question in *Page v. Mayor, etc.* (*supra*), and the questions here, we are disposed to hold that the rules which govern the admission of expert testimony in cases of this character have not been violated.

In *Turner* v. *City of Newburgh* (109 N. Y. 308) the court says : " We see no objection to the expression of opinions by competent medical experts upon an ascertained physical condition of suffering or bad health, as to whether that condition might have been caused by or be the result of a previous injury. It was for the jury to decide whether the injuries or sufferings of which the plaintiff complained were the direct result of the accident, and to that end it was proper to give evidence tending to show, in the opinion of witnesses competent to speak upon the point, that they were the results of the plaintiff's fall."

The long line of cases exhaustively and learnedly discussed by appellant's counsel, in which the admissibility of expert testimony is considered, present questions of mechanical construction and kindred subjects which have no application.

The question whether the trial court erred in refusing to make an order compelling the plaintiff to submit to a physical examination,

at the instance of defendant, or in default thereof to have his evidence stricken out, need not be discussed at length.

The case of *McQuigan* v. *D., L. & W. R. R. Co.* (129 N. Y. 50) sets at rest any doubt as to whether the courts had power to make such order prior to the amendments to section 873, Code of Civil Procedure, in 1893 and in 1894.

It is true the statutes and the case above referred to deal with the question of power to compel submission to such an examination *before* trial. Here the application was made upon the trial. But the question of power, in the absence of statutory authority, rests upon the same principle in both cases. In some States this power has been held to exist and has been exercised, but the courts of this State and the Supreme Court of the United States ( *Union Pacific R. R. Co.* v. *Botsford*, 141 U. S. 250) have held that neither the common law nor the inherent power of courts in the exercise of their jurisdiction warrant or authorize a physical examination of a party without his consent.

What is referred to by plaintiff's counsel as an exception to the rule is really not within the rule. When a party in open court voluntarily submits his person to inspection for his own benefit he confers upon the opposing party a right to the further inspection precisely the same as a party who becomes a witness must submit to cross-examination.

But the counsel for the appellant ingeniously argues that even if the court was correct in ruling that it had no power to make the order asked for, yet, since the power was conferred by express statutory enactment after the trial and before the entry of judgment, the evidence which he could have produced if the examination asked for had been ordered, should be treated as *newly-discovered evidence*, and upon that ground a new trial should be granted.

We cannot concur in this unique proposition; we have no means of knowing what evidence would have been produced if the physical examination had been made. Experts were called for the defendant, and it is impossible to say that their evidence would have been different after such examination than it was without it. However that may be, it cannot be said that evidence produced under such circumstances can be called "newly-discovered evidence" within the legal meaning of that phrase.

The case was properly submitted to the jury. Every material question of fact was contested. The apparent preponderance in volume of the testimony offered by the defendant does not authorize us to reverse the finding of the jury. It was its province to decide upon the conflicting evidence, and it cannot be said that the testimony does not support the verdict.

The fact that two juries have found for the plaintiff and that the trial court denied defendant's motion for a new trial are circumstances entitled to some weight in deciding the action of the appellate court upon the question whether there is evidence to sustain the verdict. (*Ferguson* v. *Gill*, 74 Hun, 566.)

The appellate tribunal is not warranted in reversing a judgment so far as it is based upon questions of fact, upon the sole ground that in its opinion a different conclusion should have been reached upon conflicting evidence. (*Baird* v. *Mayor, etc.,* 96 N. Y. 567.)

There are numerous exceptions in the case which have not been specifically discussed, because we believe them to be within the rules above considered. A careful examination of the record leads us to the conclusion that no material error was committed upon the trial which was prejudicial to the defendant.

These views necessarily lead us to hold that defendant's motion for a new trial was properly denied, and that the judgment of the court below must be affirmed.

LEWIS, BRADLEY and WARD, JJ., concurred.

Judgment and order affirmed.