## HUBER *v.* MILLER.

[68 Pac. 400; 54 Cent. L. Jour. 429.]

TRIAL—MOTION FOR NONSUIT—PROVINCE OF JURY.

1. The jury being the judges of the facts, the court should not decline to submit a case if the plaintiff's testimony tends, even remotely, to support the allegations of the complaint. In this instance the case was properly sent to the jury, though the plaintiff's testimony was somewhat confused.

TRIAL—DIRECTING VERDICT FOR DEFENDANT.

2. If a verdict is directed in favor of defendant it precludes another action for the same cause, which is not the case where a motion is allowed to take the case from the jury for insufficiency of plaintiff's evidence. In some cases the courts are justified in directing a verdict for the defendant after all the evidence has been submitted, but there must have been more of a defense than a contradiction of the plaintiff's case—to direct a verdict on a mere contradiction would be to determine the weight of the evidence, which a judge has no right to do.

MISCONDUCT OF COUNSEL IN ARGUMENT.*

3. Where there was evidence tending to show that defendant and his partner were allied in some manner with the makers of the notes upon which plaintiff's action was brought, and that all were engaged in a common purpose to obtain money on the credit of irresponsible parties, it was not an unwarranted abuse of privilege for counsel to designate defendant and his partner as vultures and wolves, and as fit subjects for the penitentiary, and by permitting such invective the court did not so abuse its discretion in regard to control of counsel and their arguments as to warrant a reversal of a judgment in favor of plaintiff.

From Multnomah: ARTHUR L. FRAZER, Judge.

Action by J. M. Huber against C. W. Miller. From a judgment in favor of plaintiff, defendant appeals.     AFFIRMED.

For appellant there was an oral argument by *Messrs. Lionel R. Webster* and *Nathaniel H. Bloomfield,* with a brief to this effect:

---

*NOTE.—This case is rereported in 54 Cent. Law Jour. 429, with a note collecting many cases on the subject of Remarks of Counsel as Reversible Error. See, also, Remarks of Counsel as Reversible Error in Civil Cases, in 53 Cent. Law Jour. 85, and extensive note, Misconduct of Counsel in Argument, 9 Am. St. Rep. at p. 559.—REPORTER.

I. There was no evidence to show that any money was loaned by Huber to Miller, and the motion for a nonsuit should have been granted: *Brown* v. *Oregon Lum. Co.* 24 Or. 315 (33 Pac. 557); *Serles* v. *Serles,* 35 Or. 289 (57 Pac. 634); Hill's Ann. Laws, §§ 246, 247.

II. The evidence affirmatively showed that no money was loaned by Huber to Miller, and therefore defendant's request for a direction to the jury to find in his favor should have been granted.

III. The court erred in its refusal to restrain counsel for respondent from vilifying and abusing appellant and his witnesses, in his address to the jury, in refusing to expunge this vilification and abuse after it had been uttered, and in refusing to protect appellant therefrom and instruct the jury to disregard it: *Tucker* v. *Hennicker,* 41 N. H. 317; *People* v. *Ah Len,* 92 Cal. 282 (27 Am. St. Rep. 103); *Fletcher* v. *State,* 49 Ind. 124 (19 Am. Rep. 673); *School Town of Rochester* v. *Shaw,* 100 Ind. 268; *Berry* v. *State,* 10 Ga. 522; *Cleveland Paper Co.* v. *Banks,* 15 Neb. 20 (48 Am. Rep. 334, with note, 16 N. W. 833); *Tillery* v. *State,* 24 Tex. App. 251 (5 Am. St. Rep. 882); *Randolph* v. *Landwerlen,* 92 Ind. 34; *McDonald* v. *People,* 126 Ill. 150 (9 Am. St. Rep. 547, 18 N. E. 817); *Brown* v. *Swineford,* 44 Wis. 282 (28 Am. St. Rep. 582); *Bullard* v. *Boston & M. Ry. Co.* 64 N. H. 27 (10 Am. St. Rep. 367, and note); *Hatch* v. State, 8 Tex. App. 416 (34 Am. Rep. 751); *Coble* v. *Coble,* 79 N. C. 589 (28 Am. Rep. 338); *Perkins* v. *Burley,* 64 N. H. 524; *Martin* v. *State,* 63 Miss. 505 (56 Am. Rep. 812, with note); *Bessette* v. *State,* 101 Ind. 85; *Tenny* v. *Mulvaney,* 8 Or. 522; *State* v. *Anderson,* 10 Or. 456; *State* v. *Drake,* 11 Or. 399; *State* v. *Olds,* 19 Or. 397, 434 (24 Pac. 395); *State* v. *Foot You,* 24 Or. 70.

For respondent there was an oral argument by *Mr. Henry E. McGinn,* with a brief to this effect:

I. Two trials of this case have resulted in verdicts for the full amount demanded, and it is confidently submitted that it must be a very extraordinary case indeed in which an appellate

court can be induced to grant a second new trial on a simple matter of fact: *Clerk* v. *Udal,* 2 Salkeld's, 649 (1702) ; *Chambers* v. *Robinson,* 2 Strange, 691, 692 (1725) ; *Goodwin* v. *Gibbons,* 4 Burrows, 2108; *Swinnerton* v. *Marquis of Stafford,* 3 Taunt. 232; *Joyce* v. *Charleston Ice Mfg. Co.* 50 Fed. 371, 375; *Hill* v. *Smith,* 32 Cal. 166; *Milliken* v. *Ross,* 9 Fed. 855; *Willis* v. *Bucher,* 2 Binn. 467; *Keble* v. *Arthurs,* 3 Binn. 25, 28; *Berks County* v. *Ross,* 3 Binn. 520, 526; *Archer* v. *New York & H. R. R. Co.* 106 N. Y. 589, 601; *Peacocke* v. *Maucke,* 42 Ind. 478; *Todd* v. *Demerec,* 15 Colo. 89; *Pensacola & G. R. Co.* v. *Nash,* 12 Fla. 497, 511; *Wood* v. *Hildreth,* 73 Ill. 525; *Cole* v. *Fall Brook Coal Co.* 87 Hun, 584; *Bennett* v. *Runyon,* 4 Dana (Ky.), 422; *City & Suburban R. Co.* v. *Waldhaur,* 84 Ga. 706; *Davis* v. *Smith,* 30 Ga. 263; *Duggan* v. *Cole,* 2 Tex. 381, 396; *Howitt* v. *Estelle,* 92 Ill. 218; *Griffin* v. *Kehrer,* 24 Ill. App. 243, 245; *Osborn* v. *Miner,* 46 Ill. App. 133; *Graham* v. *Sadlier,* 60 Ill. App. 522; *Fowler* v. *Aetna Fire Ins. Co.* 7 Wend. 270, 275; *Barrett* v *Rogers,* 7 Mass. 297, 300; *Turner* v. *Bird,* 44 Miss. 449; *Steadman* v. *Wilher,* 7 R. I. 481, 489; *Van Blarcom* v. *Kip,* 26 N. J. Law, 351, 360.

II. An appellate court, when there has been a request made in the court below to direct a verdict and an exception taken to a refusal of the trial court to so direct, will look into the evidence far enough to determine whether there was any evidence. When there is evidence, though slight, a verdict will not be disturbed. The reason is obvious; a toal want of evidence upon some essential fact renders the error of the trial court one of law; but when there is some evidence, for an appellate court to attempt the correction thereof upon a writ of error would be but a correction of error in fact, and not in *Caesar,* 15 Or. 62, 68 (13 Pac. 652).

law, a power which this court does not possess: *McBee* v. *Ceasar,* 15 Or. 62, 68 (13 Pac. 652) ; *Hardwick* v. *State Ins. Co.* 23 Or. 291, 293 (31 Pac. 656) ; *Sperry* v. *Wesco,* 26 Or. 483, 494 (38 Pac. 623) ; *Voorhis* v. *Terhune,* 50 N. J. Law, 147, 159 (7 Am. St. Rep. 781, note) ; *Conely* v. *McDonald,* 40 Mich. 150, 159; *Westcott* v. *New York & N. E. R. Co.* 152 Mass. 465,

467; *Aetna Life Ins. Co.* v. *Ward,* 140 U. S. 76, 91; *Erie Railroad* v. *Winters,* 143 U. S. 60, 75; *Walker* v. *Bailey,* 65 Me. 354, 359; *Alexander Dye Works* v. *Ronfousse,* 57 N. J. Law, 700; *Chidester* v. *Yard,* 155 Pa. 483, 489; *Bartlett* v. *Kingan,* 19 Pa. 341, 343; *Cooper* v. *Perry,* 16 Colo. 436, 437; *Lisbon* v. *Bath,* 23 N. H. 1, 10; *Jackson* v. *Harby,* 70 Tex. 410, 416; *Leonard* v. *Barnett,* 70 Ind. 367, 372; *Grant* v. *Westfall,* 57 Ind. 121, 127; *Hall* v. *Huse,* 10 Mass. 39, 42; *Heywood* v. *Stiles,* 124 Mass. 275; *Forsyth* v. *Hooper,* 93 Mass. (11 Allen) 419; *Ward* v. *New Eng. Fibre Co.* 154 Mass. 419; *Cruger* v. *Clark,* 44 Ga. 224, 226; *Pulliam* v. *Ogle,* 27 Ill. 189; *Best Brew. Co.* v. *Dunlery,* 57 Ill. App. 96; *Scannell* v. *Strahle,* 9 Cal. 177; *McKillop* v. *Duluth St. Ry. Co.* 57 Minn. 408; *Brockman* v. *Berryhill,* 16 Iowa, 183, 184; *Schermer* v. *Gendt,* 52 Iowa, 742; *Capelle* v. *Brainard,* 52 Mo. 479; *Trowbridge* v. *Baker,* 1 Cow. 251, 252; *Whitcomb* v. *Thomas,* 47 Neb. 909; *Gafford* v. *Hall,* 39 Kan. 166; *Smith* v. *Tiffany,* 36 Barb. 23, 25, 26; *Knickerbocker* v. *Anderson,* 31 N. J. Law, 333; *Hill* v. *New Haven,* 37 Vt. 501, 509 (88 Am. Dec. 613); *Williams* v. *Town of Clinton,* 28 Conn. 264, 266.

III. Just, even fierce, invective, when based upon the facts in evidence, and all legitimate inferences therefrom, is not discountenanced by the courts: 2 Ency. Pl. & Pr. 747; *Tucker* v. *Henniker,* 41 N. H. 317, 322; *Cawfield* v. *Asheville St. Ry. Co.* 111 N. C. 597, 598 (where the expression ''whore-house pimp'' was held justified by the evidence); *Goodman* v. *Sapp,* 102 N. C. 477, 481; *George* v. *Swafford Bros.* 75 Iowa, 491, 496; *People* v. *Winslow,* 39 Mich. 505, 507 (opinion by Cooley, Judge, where the court refused to set aside verdict for use during closing argument of the following expression: ''They are the lowest of the low deadbeats''): *People* v. *Perriman,* 72 Mich. 184, 190 (where ''professional bigamist'' was sustained); *Snodgrass* v. *Commonwealth,* 89 Va. 679, 685 (the expression ''defendant's fiendishness'' was held justified by the evidence); *State* v. *Shawn,* 40 W. Va. 1 (where ''steeped in crime'' and other similar remarks were held not to be abuse of legitimate discussion); *Burton* v. *O'Neill,* 6 Tex. Civ. App.

613, 617; *Hickey* v. *Behrens,* 75 Tex. 488, 491 (where the conduct of one of the parties is spoken of as a ''colossal rascality''); *House* v. *State,* 19 Tex. App. 227 (where speaking of the defendant in a criminal case, it was said a more notorious character could not be found); *Pierson* v. *State,* 18 Tex. App. 524, 564; *McConnell* v. *State,* 22 Tex. App. 354, 369; *Anderson* v. *State,* 104 Ind. 467, 475; *Fertig* v. *State,* 100 Wis. 301, 307 (a strong and well considered case from which we have made citations *in extenso* later on in this brief).

This is an action to recover money alleged to have been loaned to defendant. The complaint contains two counts. By the first it is alleged that the plaintff, on September 7, 1892, at the instance of defendant, advanced and loaned to him $1,000, which he agreed to repay in six months, with interest at the rate of 10 per cent per annum, of which $375, as interest, has been paid, and no more. By the second count it is alleged that plaintiff advanced to defendant a like sum on October 14, 1892, which defendant agreed to repay in one year, with interest at 10 per cent per annum; that no part of the principal has been paid, and but $145 as interest. The answer consists in denials only. The trial was had before a jury, which resulted in a verdict for plaintiff, and the defendant appeals.

MR. JUSTICE WOLVERTON delivered the opinion.

Three questions are raised by the record upon which the defendant relies for reversal of the judgment. The first has relation to a motion for a nonsuit, made at the close of plaintiff's evidence; the second to a motion to direct a verdict for defendant; and the third has reference to the argument of plaintiff's counsel to the jury, wherein, it is asserted, he was permitted, over objection, to go outside of the evidence adduced, and to resort to personal invective and abuse prejudicial to defendant's case. These matters will be considered in their order.

1. The plaintiff, as a witness in his own behalf, testified, in effect, that he became acquainted with the defendant some time prior to the negotiations alluded to in the complaint; that their

relations were friendly and confidential; that he had been led to trust the defendant as a brother, and had great confidence in his business capacity and integrity; that some time prior to the first alleged loan the defendant importuned him to loan Schindler money upon some furniture in the Grand Central Hotel, then to take stock or invest in a building and loan association, and later requested him to make a loan to another party, all of which he declined; that finally the defendant offered to take the money himself upon his own responsibility, and that thereupon, on the 7th day of September, 1892, the plaintiff advanced $1,000 to him, with the agreement that he pay plaintiff 10 per cent per annum thereon, and return the principal in about 30 days. He further testified, in substance, that defendant wanted him to loan money to a corporation known as Home Builders, and to J. D. Cook and C. E. Howland, managers of the concern, but that, being unacquainted with these people, or their financial condition, or that of the Home Builders, he declined to extend them credit, and that thereon the defendant again agreed to take the amount of money desired upon his own responsibility, and to pay plaintiff for the use thereof 10 per cent per annum; and that the second $1,000 was advanced under that arrangement, and none other.

The plaintiff, under pressure of cross-examination, asserted and reasserted, with apparent consistency, that such were the real transactions concerning the loaning of the two sums of money, but there was much elicited having a strong tendency to discredit and impeach his statements. To illustrate, the records show that on the day he claims to have made the first loan to Miller, of $1,000, the plaintiff drew his check for the identical sum in favor of a third party, who executed a note for a like sum, payable to plaintiff six months after date, with interest at 10 per cent per annum. So, with the second alleged loan, it appears that, on the day it is alleged to have been made, the Home Builders executed a note to plaintiff for the sum of $400, and the Home Builders and Cook and Howland executed another payable to plaintiff for $600, and at the same time

plaintiff drew his check payable to the Home Builders for
$1,000. It further appears, however, that these notes and cer-
tain securities, which are alleged to have been turned over as
collateral, never actually came into the hands of the plaintiff,
but were left with the defendant,—whether by the plaintiff or
not, or with his authority, is a disputed question,—and re-
mained in his custody up to the time of the institution of the
action, and were offered in evidence by him at the trial. There
were also produced, during plaintiff's examination, numerous
letters written by him containing apparent admissions that
persons other than defendant are his debtors. Plaintiff, how-
ever, attempts to explain all these matters by asserting that he
was misled by the defendant, and that it was at his particular
request he was induced to write to these parties, and endeavor
to collect from them, while insisting at the same time upon
defendant's liability and obligation to pay under the agree-
ments set out in the complaint. There is also another feature
of the testimony susceptible of a different construction. The
plaintiff received payments as interest from time to time be-
yond the legal rate. For instance, at the end of six months
he received a check from the Home Builders for $60, and
at the end of the year received another check for the same
sum, or 12 per cent per annum. He also received from an-
other, through Miller, interest at the rate of $10 per month for
six months, and perhaps other payments direct. Touching
this feature, the plaintiff testified that he told Miller the tak-
ing of $10 per month was 12 per cent per annum interest, indi-
cating that it was usurious, but that defendant assured him it
was all right; that he would fix that. Nevertheless, the plain-
tiff insisted that defendant should keep the excess of interest,
which he apparently did not do. That there was an arrange-
ment of some kind to take an unlawful rate is evidenced by a
letter written by the defendant to plaintiff on April 29, 1895,
wherein he says: ''Mr. ——— agreed to pay $10 per month
interest on this money, and, of course, this was an illegal rate,
and I could not indorse the same on the note for that reason.
Had this indorsement been put upon the note, your note would

not be of any value to you.'' The evidence being very volumi-
nous, it is impossible to examine it in detail. These references,
however, will suffice to indicate in a general way the trend
thereof up to the time plaintiff rested his case, and we are
agreed that there was sufficient to carry the same to the jury
upon plaintiff's cause as set out; that is, that these loans were
made by him direct to the defendant with an agreement on his
part to repay them with interest at 10 per cent per annum.
The fact that an arrangement probably existed whereby the
plaintiff was to obtain an unlawful rate of interest, and that
the notes referred to evidence a promise to pay 10 per cent
only, would indicate, in some measure, that the written con-
tracts were not the real ones attending the transactions, and,
the whole testimony considered, there is a susceptibility of
reasonable inference and deduction that plaintiff is right in
his contention, so that the matter was properly submitted to
the jury for their determination.

2. The second question is cognate to the first, and is governed
by the same principle. The practice of directing verdicts has
obtained in this jurisdiction, and we may say generally: Prof-
fatt, Juries, § 351; *Way* v. *Illinois Cent, R. Co.* 35 Iowa, 585;
and *Cutler* v. *Hurlbut,* 29 Wis. 152, 165. The result differs
from an involuntary nonsuit, in that it effectually concludes
the controversy, and thus precludes another action. ''It is
scarcely necessary,'' says Mr. Thompson, in his work on Trials
(section 2268), ''to recall the principle that a nonsuit cannot
be granted, or a peremptory instruction for the defendant
given, where there is evidence tending to show a right of re-
covery in the plaintiff, although the court may believe that the
weight of evidence is with the defendant; or, to state it more
loosely, though in language which is found in judicial opinions,
where, from the evidence, the jury may properly find a verdict
for the plaintiff.'' The case of *Chicago, R. I. & P. R. Co.* v.
*Lewis,* 109 Ill. 120, is illustrative. A motion was there made,
as here, to direct the jury to return a verdict for the defendant.
The court say: ''Without entering upon any analysis of the
evidence, it is sufficient to say it was of that character the

court would not have been justified in withdrawing the case from the jury, or, what is the same thing, instructing the jury to find for the defendant. * * Asking an instruction to withdraw a case from the jury is, in effect, the equivalent of a demurrer to the evidence. A demurrer to the evidence is understood to admit everything it tends to prove. Applying that principle to this case, and admitting all the testimony tends to prove, this court has no hesitation in saying it is not a case that ought to have been taken from the jury, or where the jury should have been instructed to find for defendant.'' So in *Re Kipp's Estate,* Deceased,63 Mich. 79 (29 N. W. 517, 518), where the court was requested to direct a verdict for the defendant, it was said: ''There was some testimony in the case from which inferences might be drawn proper to charge the estate, and the court could not pass upon that.'' And again, it was held by the court of appeals of Kansas, Southern Department (*St. Louis & S. F. R. Co.* v. *Toomey,* 49 Pac. 819, that ''a jury should not be directed to return a verdict for the defendant when, in the judgment of the trial court, plaintiff, according to the rules of evidence, has produced sufficient testimony—admitting its truth, and drawing from it all the inferences that can reasonably be drawn from it—that the jury might reasonably find a verdict for the plaintiff.'' It is manifest, therefore, that a motion at the close of the case to direct a verdict for the defendant, intended simply to defeat the plaintiff's action, and not to secure affirmative relief, gives rise to the identical inquiry as does a motion for nonsuit. What the inquiry is upon a motion for nonsuit has so often been determined by this court, and is so well understood, that it would be a work of supererogation to attempt to restate it at this time. There are cases where, no doubt, it would be proper to grant a motion to direct a verdict at the close of the case, when it or a nonsuit would not be allowed at the close of the plaintiff's testimony; but where the testimony of the parties litigant is merely conflicting and contradictory, the plaintiff having made a case in the first instance sufficient to entitle him to go to the jury, it is not within the province of the court to take it away later.

Employing the language of Mr. Justice SCHOFIELD in *Frazer*
v. *Howe*, 106 Ill. 563, 574: "It is not within the province of
the judge, on such a motion, to weigh the evidence and ascer-
tain where the preponderance is.   This function is limited
strictly to determining whether there is, or is not, evidence
legally tending to prove the fact affirmed; *i. e.*, evidence from
which, if credited, it may reasonably be inferred, in legal con-
templation, the fact affirmed exists, laying entirely out of view
the effect of all modifying or countervailing evidence."   In
*Spensley* v. *Lancashire Ins. Co.* 54 Wis. 433 (11 N. W. 894),
there was a motion for a nonsuit at the close of the plaintiff's
testimony, and another at the close of the case.   The issue was
single, and was whether the injury plaintiff had sustained was
caused by lightning.   The latter motion was sustained by the
trial court, and on that account the case was appealed. Speak-
ing of the question thus raised, Mr. Justice CASSODAY says:
"The simple question is whether the evidence in behalf of the
plaintiff, had it remained undisputed, and giving to it the most
favorable construction it will legitimately bear, including all
reasonable inferences from it, is sufficient to justify a verdict
in favor of the plaintiff.   In other words, is there evidence,
when so construed, tending to prove that lightning was an
agency in the destruction of the plaintiff's building, within
the meaning of the policy?"   The fact that the defendant has
produced evidence in direct conflict with that of plaintiff does
not change the legal question, and it remains yet to be deter-
mined whether there has been any evidence adduced legally
tending to prove the fact affirmed; that is to say, evidence from
which it may be legitimately inferred by the application of in-
telligent and reasonable deduction, ascribing thereto absolute
credence.   The court can have nothing to do with the cred-
ibility of witnesses or inferences to be drawn from facts proven
and other matters of kindred nature which go to make up the
weight of evidence; and, whenever it becomes necessary to call
into requisition this method of deduction in the determination
of a controversy touching a fact or facts, the jury, and not
the court, must dispose of it.   This court has said, in *Herbert*

v. *Dufur,* 23 Or. 462, 466 (32 Pac. 302) : If there is a fair
conflict of evidence arising from contradictory testimony, or if
the inferences to be drawn from the testimony are conflicting,
or if the witnesses are neither indifferent to the result nor con-
sistent in their statements, so that there is a question as to the
credit to be given them, the case must go to the jury.'' In
further support of this view of the law, see *McQuown* v.
*Thompson,* 5 Colo. App. 466 (39 Pac. 68) ; *Bartelott* v. *Inter-
national Bank,* 119 Ill. 259 (9 N. E. 898) ; *Reed* v. *Inhabitants
of Deerfield,* 8 Allen, 522; *Cooper* v. *Waldron,* 50 Me. 80;
*Randall* v. *Baltimore & Ohio R. Co.* 109 U. S. 478 (3 Sup. Ct.
322) ; *Brooks* v. *Inhabitants of Somerville,* 106 Mass. 271.

   This should suffice to dispose of the question, but it is in-
sisted that the motion should be considered upon like principle
as a motion to set aside a verdict or for a new trial, in which
case the trial court is permitted to consider the weight of the
evidence and pass upon its sufficiency in point of fact.    The
legal distinction between the two proceedings was pointed out
in *Serles* v. *Serles,* 35 Or. 289 (57 Pac. 634).    This court can
only deal with the evidence in a proper proceeding for a de-
termination of its sufficiency in point of law.    The trial court
may determine its sufficiency in point of fact, error not being
assignable as to the latter: *State* v. *Foot You,* 24 Or. 61 (32
Pac. 1031, 33 Pac. 537).    Considering the question, therefore,
of the legal sufficiency of the testimony as presented by the
motion to instruct, not by that to set aside the verdict, we find
several witnesses were produced, who flatly contradicted the
plaintiff upon the direct and vital point in issue; but this was
effective only to produce a conflict in the testimony, and the
jury were at liberty to believe the plaintiff as against several,
if his testimony produced conviction in their minds.    Indeed,
there is an express provision of the statute requiring the court
to instruct the jury ''that they are not bound to find in con-
formity with the declarations of any number of witnesses,
against a less number, or a presumption or other evidence satis-
fying their minds'': Hill's Ann. Laws, § 845, subd. 2.    The

question is purely one as to the sufficiency of the evidence in point of law, and we are precluded, as we have seen, from reviewing the findings of the jury, or the action of the trial court respecting them, which in this case set aside one verdict, but refused to do so the second time,—a persuasive circumstance in favor of a present termination of the controversy: *Buenemann* v. *St. Paul, Minn. & M. Ry. Co.* 32 Minn. 390, 393 (20 N. W. 379); *Duggan* v. *Cole,* 2 Tex. 381, 396; *Cole* v. *Fall Brook Coal Co.* 87 Hun, 584 (34 N. Y. Supp. 572).

3. As to the third contention, it is urged with especial emphasis that counsel for plaintiff, in his argument to the jury, was permitted to go outside of the testimony, and to resort to personal abuse and vilification to an unwarranted degree, and that the case should be reversed on that account, if for no other. The most severe of the remarks alluded to are as follows: ''Now, if there were ever two bunco men in the State of Oregon, those two men are Miller and Miller.'' ''A bunco man goes down ordinarily and meets a man at the train. He takes the man up town, gains his confidence, and then takes him into a room and introduces him to a friend of his, another man, and that man fleeces him out of his money. According to the testimony of these people, that is about the basis these men acted upon.'' ''You can take the testimony of C. W. Miller. It was that Elmer Miller went to work and took this man into the office of ———, and left ——— to do the work. Put their construction upon it. That is the testimony of Elmer Miller,—he took him to ——— office to have ——— fleece him there.'' ''Miller, I say, in regard to your oath of office, you led that man along and you worked him; you worked him with the Grand Army racket; you worked upon the poor old man's sympathy; you worked upon him until you filched from him his money; and I want the promise you made to him to be kept good. I want you to be held to your promise.''

''We tried a bunco man the other day in the criminal department of this court, but what that man did was a trifle compared with C. W. Miller, the man who bilked this old man out of his money. * * 'In the start who caused it to be done?'

The Millers, the Cooks, and the Howlands, who preyed like vultures and wolves upon this community for four or five years; who, if they had their honest deserts, would be in the penitentiary.''

It is the privilege of the counsel in argument to comment upon the evidence and facts proven, and to draw all legitimate inferences therefrom. In this the law accords to him a large degree of freedom, and the means thus accorded is justly regarded as most efficient in arriving at the truth. The latitude or range of argument, however, cannot be permitted to extend beyond the facts in evidence, and it is a just and ample cause for reversal where counsel, against objections, are notwithstanding allowed to state facts pertinent to the issues not in evidence, or to assume in argument that such facts are in the case. The jurors are triers of fact upon the evidence adduced, which is scrutinized in its admission by the court, and they must exclude extraneous matters from consideration in arriving at their verdict; hence it is inconsistent and incompatible with the dictates of common justice for counsel to attempt to influence them by statements of facts outside the range of evidence, or to assume a fact as though proven when no such inference can be reasonably drawn from the evidence. True, jurors are sworn to try the cause according to the law and evidence, and all proper intentions must be accorded them while in the discharge of their functions; but it is not beyond human probability that they might be unconsciously influenced by adroit statements of facts not pertinent to be submitted to them, interweaving them with legitimate testimony; so it has become a salutary rule of law that if counsel is permitted to pursue such a course, when timely objection has been made, it will constitute cause for reversal. Uncalled for personal abuse by counsel of parties or their witnesses calculated to inflame the passions of the jury, and materially prejudice the case adversely to the party complaining, if repeated and persisted in after being directed to desist, will also afford grounds for a reversal. But when arguing within the limits of admitted or controverted facts the counsel should enjoy the greatest

latitude consistent with decorum and a reasonable ambition to succeed by honorable means. It is usually, however, within the discretion of the trial judge to determine whether counsel transcend the limits of professional duty and propriety in this particular, and the exercise of such discretion is not the subject of review, except where they are permitted to travel out of the record, or to persist in disregarding the admonitions of the trial judge, or to indulge in remarks of a material character so grossly unwarranted and improper as to be clearly injurious to the rights of the party assailed: Proffatt, Jury, § 250; Weeks, Attys. at Law (2 ed.), §§ 1112, 1113; 2 Ency. Pl. & Pr. 727, 747, 749; *Tenny* v. *Mulvaney,* 8 Or. 513; *State* v. *Anderson,* 10 Or. 448; *McDonald* v. *People,* 126 Ill. 150 (18 N. E. 817, 9 Am. St. Rep. 547); *Cleveland Paper Co.* v. *Banks,* 15 Neb. 20 (16 N. W. 833, 48 Am. Rep. 334); *School Town of Rochester* v. *Shaw,* 100 Ind. 268; *Fletcher* v. *State,* 49 Ind. 124 (19 Am. Rep. 673); *People* v. *Ah Len,* 92 Cal. 282 (28 Pac. 286, 27 Am. St. Rep. 103); *Tucker* v. *Henniker,* 41 N. H. 317; *Hickey* v. *Behrens,* 75 Tex. 488 (12 S. W. 679); *House* v. *State,* 19 Tex. App. 227; *Snodgrass* v. *Commonwealth,* 89 Va. 679 (17 S. E. 238); *State* v. *Shawen,* 40 W. Va. 1 (20 S. E. 873); *Burton* v. *O'Niell,* 6 Tex. Civ. App. 613 (25 S. W. 1013); *State* v. *Emory,* 79 Mo. 461; *People* v. *Hess,* 85 Mich. 128 (48 N. W. 181); *Spahn* v. *People,* 137 Ill. 538 (27 N. E. 688).

Now, there is evidence in the case upon which an inference may be fairly predicated that the plaintiff was induced to part with his money by indirection; that Miller & Miller were allied in some manner, not fully disclosed, with the makers of the alleged notes; and that all were engaged in a common purpose to obtain money on the credit of irresponsible parties. This condition gave rise to the especial characterization by counsel and a comparison of the transactions with a bunco scheme. However severe the arraignment of the parties concerned, the argument was within the range of the facts in evidence, and there was no manifest attempt on the part of counsel to purposely drag into the case extraneous facts or matters not legiti-

mately before the jury, with a view to influencing their verdict. So there was no error upon this phase of the question. It must be conceded that counsel's strictures upon the firm of Miller & Miller and Cook and Howland were extremely severe, and his comparison of them with vultures and wolves, and insistence that they were fit subjects for the penitentiary, brings the case to the very verge of professional propriety in the employment of invective and abuse. Objection, however, was at once interposed, and the ruling of the trial court taken concerning the manner of the argument, with the result that he was permitted to proceed without admonition. By presiding over the trial and noting the bearing of the parties and witnesses, and the testimony in detail, and having in mind the full scope of the case as it appears upon questions of fact to be submitted to the jury, the trial judge acquires exceptional facilities and advantages for determining whether excess in argument through invective and abuse is being indulged in; hence it is that the appellate court will not disturb his ruling touching the matter, unless in the exceptional cases above noted. The remarks complained of do not fall within the proscription of the exceptions, and we cannot, therefore, disturb the discretion of the trial court, although we are impressed that it should have been exercised differently.     AFFIRMED.

Decided 17 March, 1902.