Argued October 15, 1918, reversed and remanded January 14, 1919.

RIDLEY v. PORTLAND TAXICAB CO.

(177 Pac. 429.)

**Trial—Motion for Nonsuit—Effect.**

1.  A motion for an involuntary judgment of nonsuit is in the nature of a demurrer to the evidence for plaintiff, and the court must decide whether there would be a want of evidence to support a verdict for plaintiff, though all his evidence be assumed true.

**Trial—Motion for Directed Verdict—Effect.**

2.  A motion for a directed verdict presents the same question for decision as does a motion for judgment of nonsuit, but the plaintiff is entitled to the benefit, not only of his own evidence, but to the benefit of any evidence favorable to him, though introduced by defendant.

    [As to when compulsory nonsuit should be granted, see note in 24 Am. Dec. 620.]

**Judgment—Finality—Motion for Dismissal—Directed Verdict.**

3.  While a judgment of nonsuit under Section 184, L. O. L., operates merely as a dismissal, a judgment on a directed verdict concludes the controversy.

**Trial—Motions—Demurrer to Pleading.**

4.  A motion for a directed verdict, as well as a motion for an involuntary judgment of nonsuit, challenges the legal sufficiency of the evidence, and in that way performs the same function in connection with the evidence as does a demurrer to a pleading, but neither of the motions is designed to perform the function of a demurrer to a pleading.

90 Or.—34

**Trial—Directed Verdict—Defects in Complaint.**

5.　Though a complaint omits some material allegation, a motion for a directed verdict, based upon the fact of such omission, should be denied, where the objection can be cured by amendment, and plaintiff's evidence, if true, makes a case against the defendant.

**Master and Servant—Injuries to Servant—Evidence—Jury Question.**

6.　In an action by a taxicab driver, who claimed to have suffered injuries as a result of defective wrench furnished by the employer to enable drivers to replace punctured tires, evidence *held* sufficient to carry the case to the jury.

**Master and Servant—Injuries to Servant—Workmen's Compensation.**

7.　Cause of action by a taxicab driver for injuries received as a result of a defective wrench furnished by the employer to remove punctured tires, etc., does not fall within the Employers' Liability Act.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.

The Portland Taxicab Company, the defendant, is a corporation engaged in the taxicab business in Portland, P. L. Ridley, the plaintiff, was an experienced chauffeur and had been employed by the defendant for about three months as an extra driver. At some time in the evening of October 23, 1916, probably about 8:30 o'clock, the plaintiff was ordered by his employer to answer a call from the Barker Apartments located at the corner of 21st and Irving Streets. Ridley immediately drove to the Barker Apartments; but he "had a blow-out" at about the time of his arrival at his destination. The wheels of the taxicabs operated by the defendant are equipped with demountable rims so that tires can be changed quickly whenever it becomes necessary to change them. The rim and the tire are held in place on the wheel by three "lugs," as one witness called them, or "worms" as another witness designated them. The taxicab driven by Ridley, like all the others operated by the defendant, was equipped with a jack, a jack-handle and a tire wrench. The tire-wrench is like the ordinary brace which is used with

a bit, except that the socket, instead of being adjustable, is sized and shaped so as to fit one end or the head of the "lugs" or "worms" which lock the tire and demountable rim to the wheel. The tire wrench is operated on the same principle as an ordinary brace and bit; and to remove a tire from one of defendant's taxicabs the operator uses the tire wrench to loosen the three "lugs" or "worms" and then takes the tire off the wheel. The jack, jack-handle and tire wrench are kept under the front seat. The available space under the front seat is not the same in all the cabs. There was a gas-tank under the front seat of the car used by Ridley, leaving for the tools "about seven inches clearance on the end and about three to three and a quarter clearance to the front." The plaintiff stopped his car after the "blow-out." It was dark. The plaintiff says that "this is the first time I had this cab." Ridley testified that he did not know how many tools were "in that tool-box"; but, to use his language, "all I know, I put my hand in there to find the tools I wanted, the jack, the jack-handle and the wrench." Ridley jacked up the wheel and then "put the wrench on the first nut, and it slipped off and flew up," when he "put the strain on it," striking him in the eye, breaking his eye-glasses, and injuring him. The socket in the wrench, according to the contention of plaintiff, had become worn so that when placed on the end of the "lug" the wrench "would just catch enough so that when you pulled up on it it would slip off." A few minutes after the accident Ridley again went to the "tool-box" and got another tire wrench with which he made the tire change without any further difficulty. The plaintiff stated that he did not know that there were two wrenches in the "tool-box" when he got the first wrench and the jack.

· The complaint avers that the work of changing tires was done "by a wrench furnished by defendant" and then alleges:

"That the wrench furnished by defendant was old, worn and defective; that the portion of said wrench which fit over the nut was old, worn and defective and had been used to such an extent that the same was rounded to such an extent that it would not firmly hold the nuts in.

"That when plaintiff attempted to remove said nut, on account of said wrench being old, worn and defective, that portion thereof which was used to secure and hold said nut permanently, slipped, and the wrench struck plaintiff in the eye; that plaintiff was wearing glasses and the force of said blow broke both glasses and drove portions of said glass into his right eye."

Plaintiff alleges that defendant was careless and negligent in the following particulars, to wit:

"1. That said defendant carelessly and negligently furnished plaintiff with an old, worn and defective wrench unsuitable for the purpose of being used as a wrench."

The trial resulted in a directed verdict for the defendant and the plaintiff appealed.

Reversed and Remanded.

For appellant there was a brief over the names of *Messrs. Davis & Farrell* and *Mr. E. K. Oppenheimer,* with an oral argument by *Mr. Wilfred E. Farrell.*

For respondent there was a brief over the name of *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Harrison Allen.*

HARRIS, J.—Among the reasons urged, in the Circuit Court, by the defendant in support of its motion for a directed verdict, was the claim that the complaint

did not state a cause of action since the pleading did not contain an allegation that the defendant knew or ought to have known that the tire wrench was defective. The defendant took the position that the words "carelessly and negligently furnished plaintiff with an old, worn and defective wrench" did not amount to an averment that the employer had knowledge of the alleged defective condition of the wrench. Although the plaintiff insisted that the quoted allegation was equivalent to an averment that the employer had knowledge of the defective condition of the wrench, still in order to remove any doubt about the sufficiency of the pleading, he requested permission to amend the complaint by inserting the words "of which the defendant had knowledge or should have known under the circumstances." The defendant objected to the proposed amendment. The court expressed a willingness to allow the motion to amend "if it is possible for an amendment to be made at this time"; but without finally ruling on the motion for permission to amend, the court stated that "nothing could be gained by an amendment as there is no evidence on that point"; and for that reason granted the motion for a directed verdict.

Assuming for the purposes of the discussion that the complaint does not allege that the defendant knew or ought to have known that the wrench was defective and that, on account of omitting this material allegation, the complaint is vulnerable to a demurrer, nevertheless, on the record presented here, it was error to direct a verdict for the defendant.

1–4. A motion for an involuntary judgment of nonsuit is in the nature of a demurrer to the evidence for the plaintiff: *Brown* v. *Oregon Lumber Co.,* 24 Or. 315, 317 (33 Pac. 557). The judge is called upon to decide

whether there would be a "want of evidence to support" a verdict for the plaintiff even though all the evidence for the plaintiff is assumed to be true: Section 183, L. O. L. A motion for a directed verdict presents the same question for decision as does a motion for a judgment of nonsuit; but the plaintiff is of course entitled to the benefit not only of his own evidence but also to the benefit of any evidence favorable to him though introduced by the defendant: *Huber* v. *Miller,* 41 Or. 103, 110 (68 Pac. 400); *Merrill* v. *Missouri Bridge Co.,* 69 Or. 585, 593 (140 Pac. 439). While a motion for a nonsuit and a motion for a directed verdict give rise to the same inquiry the result of an approving decision is not the same. A judgment of nonsuit operates merely as a dismissal of the action: 184, L. O. L.; *Malloy* v. *Marshall-Wells Hdw. Co., ante,* p. 303 (175 Pac. 661); but a judgment on a directed verdict concludes the controversy: *Huber* v. *Miller,* 41 Or. 103, 110 (68 Pac. 400). A motion for a directed verdict as well as a motion for an involuntary judgment of nonsuit challenges the legal sufficiency of the evidence. Each of these motions performs the same function in connection with the evidence as does a demurrer in connection with a pleading; but neither of these motions is designed to perform the function of a demurrer to a pleading.

5. Even though a complaint omits some material allegation a motion for a directed verdict, based upon the fact of such omission, should be denied, especially where the objection can be cured by an amendment and the plaintiff's evidence, if true, makes a case against the defendant: *Meyers* v. *Syndicate Heat & Power Co.,* 47 Wash. 48 (91 Pac. 549); *Gerke* v. *Fancher,* 158 Ill. 375 (41 N. E. 982); *Cahill* v. *Illinois Cent. R. Co.,* 137 Iowa, 577 (115 N. W. 216); *Wrought Iron Bridge Co.*

v. *Greene,* 53 Iowa, 562 (5 N. W. 770); *Austin West-
ern Co.* v. *Weaver Tp.,* 136 Iowa, 709 (114 N. W. 189).

Of course a different question would be presented
and a different result might follow if the evidence con-
clusively showed that the plaintiff was without a cause
of action.   It must be remembered that a judgment on
a directed verdict concludes the controversy; and hence
if it is permissible to direct a verdict for a defendant
merely because the complaint has omitted some mate-
rial allegation, which can be supplied by an amend-
ment, and in despite of the fact that the plaintiff has
offered evidence which would be sufficient to support
a verdict for him if accompanied by a good instead of
a bad complaint, it would result in defeating the pur-
pose of amendments and frequently would end in the
complete denial of a right by the simple but inde-
fensible act of closing the doors to the truth.   If, there-
fore, the record brought to us contains evidence which,
when accompanied by a good pleading and if believed
by a jury, would be legally sufficient to support a ver-
dict for the plaintiff, then it was error to allow the
motion for a directed verdict on account of any failure
of the complaint to allege that the defendant knew or
ought to have known that it furnished a defective
wrench.

6. There are other facts to be taken into considera-
tion in addition to those already stated.   Daniel F.
Stewart the general manager of the defendant testi-
fied that no tools except a jack and a handle for it and
a tire wrench were furnished for the cabs because the
drivers, if supplied with additional tools, sometimes
tampered with the motors.   Stewart stated that, be-
sides the tools already named, each taxicab was fur-
nished with chains which were also kept under the
front seat.   Ridley testified that along with the enum-
erated tools and the chains "sometimes there is a tire

change and something like that" under the front seat. Among the employees of the defendant were a "garage-man," a "tire-man" and a master mechanic. Stewart told the jury that the "garage-man supplies the cars"; and he also explained that it was the duty of every driver to report ten minutes previous to the time for his departure and "to investigate and see whether he has the proper tools and also the proper amount of air pressure in each of his tires." Ridley stated that he was "hired to drive the car"; and while he admitted that there was a "sign on the wall right where the air pressure gauge is, to put 80 pounds of air in the car before it left there," he denied that his duties included that of ascertaining whether the car was supplied with the proper tools. The plaintiff asserted that a jack and a handle and a tire wrench "are supposed to be in that car all the time." The manager testified that "when a driver has a wrench out if he springs it he brings it back and gives it to the tire-man and the tire-man gives him another one and the old wrench is given by the tire-man to the master mechanic who, after they are sprung, takes that end off and puts on a new end to it."

And when the same witness was asked: "Where do you get these wrenches?" He answered thus: "Well, the lower part of the wrench there, our master mechanic makes crome nickel steel."

M. J. Marsh said that parts can be welded on a worn wrench "so that it can be made practically new until it gets worn again," and "that had been done to that particular wrench, but it had worn off again."

The court cannot say as a matter of law that the evidence recorded in the transcript is insufficient to sustain a verdict for the plaintiff. The case presented by this appeal is not entirely like that large class of cases where the employer furnishes a number of tools of the

same kind and the servant is expected to select one of them whenever needed. There is testimony to the effect that each taxicab was always equipped with a tire wrench and a jack and with no other tools. It is conceded by the defendant that "the garage-man supplied the cars." The evidence is conflicting as to whether it was the duty of the plaintiff to see that the garage-man had performed his duty. There is evidence relating to the repair of the alleged defective wrench. It was dark when the accident happened. The plaintiff says in substance that each car was supposed to be supplied with a jack and a wrench. When he raised the seat he found the tools which he expected to find. Ridley says that he did not know that two wrenches were in the "tool-box"; and he says, too, that he had not driven this car before. If he found what he expected to find and if he did not know that a second wrench was in the "tool-box" and if it was dark and if he hurried the court cannot say as a matter of law that Ridley was himself negligent in not observing the defect in the socket of the first wrench or in not hunting for and finding the second wrench and using it at the first; nor can the court say as a matter of law that the defendant was or was not negligent.

The trial court correctly decided that the facts did not bring the plaintiff within the Employers' Liability Act (Laws 1911, Chapter 3). Inasmuch as we assume that the plaintiff desires to amend his complaint, we do not attempt to decide whether a common-law liability is sufficiently pleaded. The plaintiff may apply to the Circuit Court for permission to amend the complaint.

The judgment is reversed and the cause is remanded for a new trial.        REVERSED AND REMANDED.

McBRIDE, C. J., and BURNETT and BENSON, JJ., concur.