Argued February 16; reversed March 9; rehearing denied
April 20, 1937

# BRACHT *v.* PALACE LAUNDRY CO.

(65 P. (2d) 1039)

*Lamar Tooze*, of Portland (Jaureguy & Tooze, of Portland, on the brief), for appellant.

*Arthur I. Moulton*, of Portland, for respondent.

BAILEY, J. The plaintiff, Laura E. Bracht, instituted this action against the defendant, Palace Laundry Company, to recover damages for personal injuries sustained by her when struck by a delivery truck belonging to the defendant company. From a judgment entered upon verdict in favor of the defendant, the plaintiff appeals.

The facts are substantially the following: Mrs. Bracht, an elderly woman, was crossing the intersection of Eleventh avenue and Salmon street in the city of Portland, about 6:30 p. m. on January 21, 1935, proceeding in an easterly direction in the pedestrian lane on the south side of Salmon street. When within approximately ten to twelve feet of the east curb of Eleventh avenue she was struck by defendant's delivery truck, which was being driven north on that street.

Eleventh avenue runs in a northerly and southerly direction and is fifty-four feet wide between curbs. A street-car track is laid in the middle of this street. Salmon street runs in an easterly and westerly direction and is forty feet wide between curb lines. Both thoroughfares have hard-surface pavement. The sidewalk on the south side of Salmon street is twelve feet wide and at the intersection extends from the buildings to the curb. At the time of the accident Mrs. Bracht was on her way to a business college located on the southeast corner of Salmon street and Eleventh avenue, in which institution she was, and for many years had been, a teacher.

The plaintiff was dressed in a "medium-dark brown" fur coat. The umbrella and handbag she carried were of similar color. At the corners of the intersection were cluster lights, and there was further illumination from the windows of adjacent buildings. To

any one on the sidewalks visibility was good for more than a block, according to the testimony. One of defendant's witnesses testified that it was "bright as day on that corner."

The defendant's motor vehicle was a one-ton 1929 model A Ford truck and at the time of the accident was operated by Emery Lumsden, an experienced chauffeur who prior thereto had operated delivery trucks for laundry companies for some twelve years, and for a bakery concern about five years. About a block and a half south of the place of the accident he had stopped to pick up Mr. Godfrey, an old schoolmate whom he had not seen for some time, and was taking him to his home for dinner.

The evening was stormy. Heavy rain was falling, driven by a southwesterly wind. On both sides of Eleventh avenue to the south and immediately adjacent to the pedestrian lane motor vehicles were parked. According to the plaintiff's testimony she stopped after reaching a point in the pedestrian lane beyond the parked cars, where she could see in both directions, and looked to ascertain whether there were any motor vehicles or streetcars approaching from either direction. She saw none and hurried across the intersection with an umbrella over her head, her left hand holding the handle and her right hand holding the edge of the cover in order to keep it from being blown inside out, and tilting the umbrella to the south to protect her as much as possible from the rain. The edge of the umbrella came below the level of her eyes, but she testified that she could see beneath it to the south for a short distance, perhaps ten feet. In crossing the street she did not change the position of the umbrella and did not stop after leaving the line of parked cars

at the west end of the pedestrian lane. She stated that she looked for approaching cars as much as it was possible while holding her umbrella as above described.

Plaintiff did not see the defendant's truck or know of its proximity until she was struck. She was thrown across the front bumper of the truck and the force of the impact broke her right leg. When the truck came to a stop she was still on the bumper, holding on to a lamp or other part of the truck. According to one of her statements she was carried more than three feet. She also described that distance as from the middle of the pedestrian lane to the middle of Salmon street. Two of her witnesses, both teachers at the business college, testified that they did not see the accident but were at the place of it before plaintiff was removed from the bumper, and that the front of the truck was two to three feet north of the curb line of Salmon street.

Lumsden, the truck driver, according to his testimony, had stopped at Main street, one block south of Salmon street, where there were caution signals, and was proceeding northerly at a rate not exceeding ten miles an hour. Both side windows of the truck cab were closed in order to keep out the driving rain. The truck was equipped with a windshield wiper which was in good condition and in operation at the time of the accident. Before crossing the pedestrian lane of Salmon street Lumsden slowed down to five or six miles an hour. He did not, however, see the plaintiff in the lane. As he entered the intersection her umbrella struck the windshield and he immediately stopped the truck, without, he testified, going more than twenty to thirty inches farther. Mr. Godfrey got out and found the plaintiff resting on the bumper. The driver then backed the

truck, as he states, four or five inches, because he thought one of the front wheels might be on plaintiff's foot.

According to Mr. Godfrey's testimony, the lights along the street "were blinding against this wet windshield, and they were kind of blurry, and it was very difficult to see anything." From his side of the truck he could not distinguish approaching automobiles. The driver, however, testified that the windshield wiper kept clear the outside of his half of the windshield, except the lower part, but because of the driving rain and the reflections on the wet street surface it was difficult to see objects, and especially difficult to see the plaintiff, due to the dark clothing she wore.

Two disinterested witnesses, O'Connor and Mrs. Merritt, called by the defendant, corroborated the truck driver's testimony as to the rate of speed at which he was driving and the distance traveled by him after the truck came into contact with the plaintiff.

No attempt is made here to refer in detail to all the evidence in the case. Mention should be made, however, of one feature stressed by the defendant, which is that at least two witnesses testified that a motor vehicle, traveling south on Eleventh avenue, had passed immediately in front of plaintiff after she started to cross the street, yet she stated that she had not observed it. The only testimony on this subject, so far as we have discovered, is that of the driver of the truck, and it is very vague and indefinite.

The appellant's brief contains six assignments of error, the first five of which have to do with the failure of the trial court to give certain requested instructions. The sixth is based upon the admission of testimony over plaintiff's objection.

■ The court refused to give the following instruction requested by plaintiff:

"In determining whether or not the plaintiff was guilty of contributory negligence, you are instructed that plaintiff, in the absence of notice to the contrary, had a right to assume that the driver of defendant's truck, and others, in the operation of motor vehicles, would obey the requirements of the law, and would operate their motor vehicles in a reasonable and prudent manner, and would yield the right of way to any pedestrian within the regular cross walk."

The respondent does not question the correctness of this instruction, but asserts that the principle enunciated by it is so well known and so commonly understood by the ordinary layman that to give such an instruction would be only to state what was a matter of common knowledge. It is further contended by the respondent that the trial judge fully and fairly instructed the jury on the subject of contributory negligence when he gave the following charge:

"Now, while the plaintiff has the right of way, this does not absolve her from using ordinary care—such care as an ordinarily prudent person would use under the circumstances—and it is for you to determine whether or not plaintiff did use that care which an ordinarily prudent person would use under the circumstances, considering all the conditions, the weather and everything else, and if you find that she failed to use that degree of care that an ordinarily prudent person would use under the circumstances, and you further find that this failure on her part to use that care in any way contributed as a proximate cause to the injury, why then the plaintiff could not recover, notwithstanding that the defendant may have been negligent,—or the driver of the truck."

One of the pivotal questions in the case was whether or not the plaintiff was guilty of contributory negli-

gence. In determining whether the plaintiff was using the care of an ordinarily prudent person in crossing the intersection the jury should have been advised of the principle of law embodied in the plaintiff's foregoing requested instruction. The charge given emphasized the care which the plaintiff was required to exercise to a much greater extent than it stressed her right to the use of the pedestrian lane, and entirely failed to mention the rule of law covered by the required instruction. Under the facts here involved, this requested instruction should have been given.

It cannot be said, as a matter of law or otherwise, that the usual layman is better informed of the rule of law stated in the requested instruction than in the one given.

■ Error is predicated on the court's failure to give the following requested instruction:

"A person driving an automobile is driving a machine capable of doing great damage if not handled in a careful and prudent manner, therefore, it takes more care on the part of a driver of an automobile to amount to reasonable care in a situation than is required of a pedestrian walking across a highway."

This requested instruction is in language identical with that approved by this court in the case of *Hinckley v. Marsh*, 124 Or. 1 (263 P. 886), with the exception that the word "across" is substituted for "along". In the case cited it was held that the giving of this instruction did not constitute error. The question next arose in *Krieger v. Doolittle*, 142 Or. 122 (18 P. (2d) 1041), in which the instruction objected to included, among other things, exactly the same language used in the instruction requested in the case at bar. It was there held that since the objection was to the entire

instruction and part of the charge was correct in view of the decision in *Hinckley v. Marsh*, supra, no reversible error was committed in giving it. In *Cline v. Bush*, 152 Or. 63 (52 P. (2d) 652), error was predicated on the court's failure to give to the jury a requested charge almost identical with that excepted to in *Krieger v. Doolittle*, supra. We there stated that the failure to give the requested instruction was not erroneous, and the decision on that point in *Krieger v. Doolittle*, supra, was explained with reference to the exception there taken. Neither of the last two decisions of this court on the subject, however, adversely criticized language such as that employed by the requested instruction here involved. Although according to our previous holding it would not have been erroneous to give this requested instruction, nevertheless we do not believe that the failure to give it would constitute reversible error. Giving or failing to give the instruction as requested would not have affected the jury's determination of the issues in the case.

The plaintiff requested that the following instruction be given:

"I instruct you that if you should find from a preponderance of the evidence that the plaintfif was using the regular pedestrian crossing as the truck driven by defendant's driver approached the cross walk, then and in that event it was the duty of defendant's driver to look out for and yield the right of way to the plaintiff, *and in yielding the right of way it was the duty of the driver to observe whether any pedestrians were crossing, and if necessary for the protection of any such pedestrian, to check the speed of the car or even to stop it*, and if the driver of defendant's truck under such circumstances failed and neglected so to do, then and in that event he would be guilty of negligence, and if such negligence was the proximate cause of plain-

tiff's injuries, and the plaintiff herself was free from negligence, then and in that event your verdict must be for the plaintiff.''

The court gave the instruction substantially as requested, with the exception of that part here shown in italics. It is now urged by the appellant that the court erred in omitting from its charge the detailed explanation of the driver's duty contained in the requested instruction. In support of her position appellant directs attention to the fact that the part of the requested instruction omitted by the trial court was taken practically word for word from the language used by this court in *Maneff v. Lamer*, 148 Or. 455 (36 P. (2d) 336), explaining the respective rights of a pedestrian and the driver of a motor vehicle at street intersections. It was not the purpose of this court, in discussing the question then before it, to prescribe the language to be used by trial courts thereafter in their instructions in all similar cases. The court there was merely stating the law as to the respective rights of the parties in that particular instance. The phraseology employed to embody this court's conception of the legal aspects of that case was not intended to be interpreted as a rigid formula for framing instructions. The trial court has a wide discretion in its choice of words and expressions in charging the jury. In many cases it may believe a concise statement of the law sufficient. In other instances it may deem necessary an enlargement thereon by explanatory detail. In the instant case the court expressly charged the jury that if the plaintiff was using the regular pedestrian crossing, then it was the duty of the driver of the truck to look out for her and yield to her the right of way. Later, at the suggestion of counsel for both litigants, the court advised the jury that it was

conceded that the plaintiff was in the regular pedestrian lane when struck. We are of the opinion that the instruction given was sufficient to apprise the jury of the respective rights of the parties, without the explanatory matter contained in the requested instruction.

■ The fourth requested instruction which the court refused to give was to the effect that it was the duty of the driver of the truck "at and immediately prior to the accident to keep such a lookout for the purpose of ascertaining the presence of the plaintiff and to avoid injuring her as would have been kept by an ordinarily prudent person under the same or similar circumstances." This requested instruction did not contain anything materially different from the court's charge to the jury with reference to the duty of the driver to look out for and yield the right of way to the plaintiff, and its other instructions on the question of negligence. The giving of this instruction would only have emphasized what the court otherwise had told the jury as to defendant's duty.

■ The fifth and last requested instruction refused by the court, with exception taken by appellant, related to the duty of the driver to have the truck under control. With the consent of the plaintiff the court withdrew from the consideration of the jury plaintiff's charge of negligence against the defendant based on excessive speed. The evidence was undisputed that the truck was in good working condition and that the brakes were in good order. After withdrawing from the jury this specification of negligence, and in view of the testimony as to the condition of the truck and the instructions which were given, no error was committed in refusing to give the requested instruction last above noted.

■ ■ During the direct examination of Lumsden, driver of the truck, the defendant elicited from him the statement that it was difficult to see the plaintiff because of her dark clothing and accessories. On cross-examination the witness repeated his assertions in this connection and mentioned the further fact that he had been driving for twenty years and had seen many people in dark clothes at night. He further testified:

"Q. And how many have you hit? A. Just one. Q. How did you happen to miss the rest of them? A. Well, I was just lucky.

"Q. In other words, if a person has dark clothes on and you don't hit them, it is just luck? A. It is not necessarily luck, no. Q. Well, you said it was luck. A. Yes, I did, but I have had some very close calls, but I have never hit another one. Q. With dark clothes on, you either had a close call or you were lucky? A. With dark clothes on, in the night, in the rain, it is hard to see them; yes. Q. But you managed to miss them for twenty years until you hit Mrs. Bracht? A. Yes."

On redirect examination, counsel for defendant thus addressed the same witness: "Now, counsel asked you how many people you had hit. Now, tell the jury how many.". To this, objection was interposed by counsel for the plaintiff, on the ground that the cross-examination was limited to people in dark clothing and directed solely to the direct examination, in which the witness had referred to the fact that it was difficult to see people in dark clothes. After some discussion between counsel and court, the witness asked that the question be repeated and it was put as follows: "How many accidents have you had in your long experience driving automobiles?" The witness answered: "I have never had any serious ones." Counsel then asked: "Ever injured,—any accidents where any person was injured

at all?'' After further discussion between counsel and court the following testimony was given:

"Q. Have you ever hit a pedestrian at any other time? A. No. Q. And Mr. Jaureguy asked you something about it. What has been your practice in driving to avoid it?''

Again objection was made by counsel for the plaintiff, on the ground that it was improper for the witness to "state what his practice had been in the past with regard to the manner in which he drives." After argument was had concerning the line of questioning the court overruled the objection and the examination thus proceeded:

"Q. Explain to the jury how you avoided hitting pedestrians all these years. A. I was carefully driving.''

The redirect examination went far beyond the scope of the cross-examination. By the method employed, counsel for the defendant was enabled to get before the jury Lumsden's statement that he had been a careful driver for twenty years and had never injured any other person than plaintiff. It was no more proper for the defendant to introduce evidence of the fact that the driver had not had any accidents over a long period of time than it would be for the plaintiff to show by testimony that the driver of the truck had in the past had numerous accidents. Such testimony is not material or relevant to the issues, and in the present case we believe that it was prejudicial to the plaintiff: *Dermody v. Fanning*, 153 Or. 392 (56 P. (2d) 1150); *Rayburn v. Day*, 126 Or. 135 (268 P. 1002, 59 A. L. R. 1062).

A large part of respondent's brief is devoted to comment on the court's failure to grant its motion for a directed verdict based on alleged contributory negligence of the plaintiff. It is asserted that regardless of

any error which may have been committed by the trial court the judgment which was entered was a proper disposition of the case and for that reason should be affirmed. We have carefully considered all the testimony which has been brought up to us. The transcript on appeal does not include all the testimony introduced at the trial, but does contain all the evidence bearing on contributory negligence of the plaintiff and negligence of the defendant. From the record we are of the opinion that the question of plaintiff's contributory negligence was one of fact for the jury.

The defendant makes much of the circumstance that the plaintiff was crossing the street with her umbrella interfering with her vision, but at the same time attempts to excuse the action of the truck driver in closing the windows of the cab, thereby obstructing his view. Whether or not both the plaintiff and the defendant in doing those acts exercised the care that ordinarily prudent persons would have used under similar circumstances is a question to be considered by the jury, under proper instructions, in determining the negligence of the respective parties.

We have hereinabove referred to the fact that a certain instruction should have been given by the court and that error was committed in allowing certain testimony to be given. Either one of those errors, under the circumstances, might not justify a reversal of the judgment, but we believe that the presence of both warrants a reversal. The judgment appealed from is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BEAN, C. J., and CAMPBELL and RAND, JJ., concur.