Argued April 30; affirmed June 4, 1946

## NAVARRA *v.* JONES

(169 P. (2d) 584)

*Milton R. Klepper* (Milton R. Klepper and J. Robert Patterson, of Portland, on the brief), for appellant.

*Hugh L. Biggs* (Hart, Spencer, McCulloch & Rockwood, and Biggs, of Portland, on the brief), for respondent.

Before BELT, Chief Justice, ROSSMAN, BAILEY, LUSK, BRAND and HAY, Justices.

684

## BRAND, J.

The complaint alleges that at about 5:30 a. m. on the 30th day of July, 1944, the plaintiff was a guest in an automobile owned by the defendant and operated in a southerly direction on Southeast 82nd Avenue, in Clackamas County, Oregon. It is alleged that the defendant operated the car with gross negligence and with reckless disregard of the rights of the plaintiff in that (a) he failed to have the vehicle under proper control, (b) that he operated it at an excessive rate of speed, (c) that he failed to keep a proper lookout, and (d) that he operated the car with a defective gear box, defective steering wheel and defective brakes, "all of which was well known to the defendant at said time and had been so known for a considerable time previous to the collision."

It is alleged that by reason of such operation the defendant caused the car to crash into the east end of a concrete culvert extending diagonally across 82nd Avenue and that, as a proximate result of the collision, plaintiff received the injuries set forth in the complaint.

The defendant denied all the allegations of negligence and alleged that the "steering apparatus on defendant's automobile suddenly gave way causing the defendant to lose control of said automobile and causing it to collide with a culvert on the side of the road."

At the opening of the trial it was stipulated that

"This case may be tried before the Hon. Martin W. Hawkins and a jury on the 21st day of

February, 1945, at which time neither party is personally to be present nor participate in the trial, the testimony of the plaintiff to be the testimony given in her adverse party deposition, the same to be read to the Court and jury and made a part of the record herein; the defendant's testimony to be the same as the testimony given in his adverse party deposition, said adverse party deposition to be available to either party as evidence, and to be made a part of the record of the case at the request of either party."

Accordingly, the deposition of the defendant, Clyde E. Jones, was read to the jury and introduced in evidence as a part of the plaintiff's case. Thereafter the plaintiff read to the jury and introduced in evidence the deposition of Mary Navarra, the plaintiff. The deposition of the defendant discloses that his examination was conducted by counsel for the plaintiff, there being no cross examination. Similarly the deposition of the plaintiff, Mary Navarra, was conducted by counsel for the defendant, there being no cross examination by her own attorney. Pursuant to the stipulation, neither plaintiff nor defendant attended the trial.

With the exception of the depositions, no testimony was presented by either party concerning the collision itself or the circumstances preceding it. The plaintiff testified as follows:

"Q Were you asleep, do you know, or were you awake and did you know what took place?

"A I was asleep, I think.

"Q Do you remember anything about the accident at all, how it happened?

"A No.

"Q Or what caused it to happen, or anything of that kind?

"A No, I don't.

"Q You don't recall any of that?
"A No.
"Q When did you go to sleep, Mary?
"A I don't remember if I went to sleep. I just don't remember.
"Q You don't remember whether you were asleep or awake, or anything about it?
"A No.
"Q And you don't know anything about how fast he was driving?
"A No, I don't.
"Q And you don't know anything about what course the car took?
"A No."

■ The defendant gave no testimony concerning the speed at which he was driving. There was, of course, evidence concerning the nature of plaintiff's injuries, which the plaintiff contended was some evidence of the violence of the collision with the concrete culvert, and, therefore, some evidence of the speed of the car. But such evidence alone was insufficient to show negligence, much less gross negligence, in the matter of speed. The only other testimony on which plaintiff relies as tending to support the charge of undue speed is to be found in the plaintiff's statement concerning activities which occurred earlier in the morning. Her testimony discloses that the defendant took the plaintiff and her sister, "Josephine of Arc," to a dance in Portland. At the dance they met two other girls from the shipyards. They left the dance about 12:30 a. m. and went to a chicken inn at a point not clearly identified. There was some drinking, but plaintiff testified that the defendant did not and does not drink. The defendant drove the girls into Portland and then drove to the plaintiff's home where they left the plaintiff's sister, and plaintiff and de-

fendant then continued their drive. "He was going to see someone about a radio or something." But plaintiff did not remember where they went.

■ Plaintiff testified that, on the trip to deliver the two shipyard girls to their destination in Portland, "he wasn't driving very slow," but she did not know how fast he was driving or that he was driving over the speed limit. At that time she thought he was turning the corners too fast and told him to drive a little slower which, she said, he did. From that time on she testified he drove all right so far as she could observe. When she last recalled his speed, he was driving at a "normal speed," with both hands on the steering wheel and looking straight ahead, and "not being reckless, or not being angry, or anything of that kind." There is no substantial evidence of any excessive speed at the time of or immediately preceding the accident. There is no testimony whatever concerning any failure to keep a proper lookout or proper control. The mere fact of the collision is no evidence that the defendant negligently failed to have the vehicle under proper control.

The final specification of alleged gross negligence relates to alleged defective equipment on the car. Upon this issue plaintiff testified as follows:

"Q And the car seemed to you to function all right?
"A Yes."

Plaintiff's sole reliance is upon the testimony of the defendant himself to which we will now refer. Defendant had owned the car for a month. He said: "I am a mechanic, an electrician, in general all over."

He testified:
"Q Had you had any trouble with it or observed and difficulty?

"A Well, the only trouble I had with it was nothing concerning the accident but the gear box, under the steering wheel, under the frame, had come loose two weeks before, and I had taken a wrench and tightened it up and had no more trouble with it.

"Q How does that work so far as driving the car?

"A The gears would turn. It bolts onto the sides of the frame and when it gets loose you have an awful lot of play in the steering wheel and I had an awful lot of play in the steering wheel, and I got down and looked and I found those bolts were loose and I tightened them up, and that was all there was to it.

"Q How long before the accident was that?

"A About three weeks.

"Q Was there anything wrong with the car to the effect with the brakes in any way or the pulling of the car?

"A Not that I noticed. I noticed a couple of times before that the left front wheel would pull a little bit when I put the brakes on but not enough to bother.

"Q You noticed that a couple of times?

"A Yes, just a couple of times.

"Q When would that occur? What was the effect? What was the mechanical trouble there, and what was the effect of it on driving? I don't understand that.

"A Before it happened I never saw anything wrong with the steering part, but I remember I found after the accident, or the folks found it, it seemed it was worn, but I had no idea that anything like that was wrong. It was worn and had just come apart."

He testified that "a couple of times" the brakes would "kind of pull to the left a little bit when I was stopping * * *."

"A It seemed it would catch a little more than

the rest. It would tend to pull the front wheel over but not enough to bother with.

"Q You examined that twice?

"A Yes, I examined it and could not find anything wrong with it. * * *

"Q How much time expired between the two times you had that experience when it would pull to the left?

"A I would say three or four days.

"Q How much time elapsed between the last time that you noticed that and this collision?

"A I would say a couple of weeks or something like that.

"Q You drove the car?

"A Yes, every day.

"Q Did you take it to a mechanic to find out about that pull to the left?

"A Since I am a mechanic, I did not bother with it. It was not enough to fool with. I figured if it got bad enough I could fix it myself.

"Q At the time of the accident the car was thrown to the left?

"A That is right.

"Q At this time it was much more severe than the other times you had trouble with it?

"A Yes, it was terrible. It just pulled the car to the left, and that was all there was to it.

"Q It was of the same character of pull, only much more severe?

"A That is right.

"Q A difference in degree rather than in kind?

"A That is right."

The foregoing fairly covers all of the testimony concerning the nature and cause of the accident. Neither counsel made any inquiry concerning the detailed circumstances at the time of the accident.

If this were a simple negligence case, we would have grave doubt of the sufficiency of the evidence

to raise a jury question. But the plaintiff was a guest of the defendant, and the case is controlled by the statute which provides that "no person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages, * * * unless such accident shall have been intentional * * * or caused by his gross negligence or intoxication or his reckless disregard of the rights of others." O. C. L. A. § 115-1001.

■ It will not enrich the jurisprudence of this state to quote again from the decisions concerning gross negligence or reckless disregard. Under the decisions it is clear that there was no substantial evidence of either in this case, and the court properly directed a verdict for the defendant and entered final judgment thereon. *Ross v. Hayes,* 176 Or. 225, 157 P. (2d) 517, 158 A. L. R. 452.