Argued April 21, affirmed May 11, 1960

# ALDER *v.* O'CONNOR

351 P. 2d 950

*James L. Hannam* argued the cause for appellant. On the briefs were Yunker, Fewless & Hannam and Don V. Wallace, Portland.

*John L. Schwabe,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Denecke & Kinsey and Roland F. Banks, Portland.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and DUNCAN, Justices.

DUNCAN, J. (Pro Tempore)

Appeal by plaintiff from a judgment of the circuit court of Multnomah county entered April 10, 1957, in favor of defendant pursuant to a jury verdict. The principal assignment of error rests on plaintiff's contention that because he was five years four months of age at the time of the accident, he was incapable of an act of contributory negligence and that this defense should not have been submitted to the jury. It may be noted that after instructing on the effect of contributory negligence if committed by plaintiff, the court gave an instruction in essence that plaintiff's conduct was not to be measured by the same standard as that required of an adult; that plaintiff's conduct was to be judged by that ordinarily exercised by children of the same age and experience under the same or similar circumstances. Other assignments related to instructions given or refused and to evidence admitted over objection. Defendant made a timely motion for directed verdict on the ground that the evidence failed to show negligence on his part, and he so contended on appeal.

At about 5:30 p.m. on November 8, 1955, defendant's automobile collided with plaintiff at the intersection of Glisan and 75th streets in Portland. Glisan was 50 feet wide, curb to curb, and 75th was 30 feet wide. Plaintiff, a pedestrian, was proceeding north across Glisan in the west crosswalk, and defendant was proceeding west on Glisan in the north lane of travel. Eastbound traffic on Glisan was heavy, but westbound traffic was somewhat lighter. The collision occurred at some point

north of the center line of Glisan. The area was predominantly a business area. It was then dusk or dark, and most or all the automobiles had headlights illuminated. A somewhat dimly lighted street lamp was located at the southeast corner of the intersection.

Defendant offered no evidence. The substance of the testimony of plaintiff's witnesses as to the occurrence of the collision was as follows.

Defendant, called as an adverse witness, was traveling 30 miles per hour or less. He was almost to the west crosswalk when he saw plaintiff just about at the center line of Glisan. Plaintiff was running at the time. Defendant braked his car, but the left headlight struck plaintiff.

Witness Tuel went through the intersection at approximately the same time as defendant, but in the opposite direction. Tuel was traveling about 30 to 35 miles per hour. As his car approached the crosswalk, he saw plaintiff running out from the south curb in front of him and then run back and stand near the curb. Plaintiff had a white stick he was riding like a horse and was accompanied by one or two other boys. The Tuel car was very close to plaintiff when he so ran out and as Tuel passed plaintiff, he saw him immediately run out behind his car so close that he thought plaintiff would run into the bumper. Plaintiff seemed to be running fast. Through his rear view mirror after he had passed plaintiff, Tuel saw plaintiff bounce off the defendant's car. Up to then Tuel had not seen defendant's vehicle.

Witness Allen was driving east on Glisan following Tuel and about one block behind. He saw plaintiff run in front of the Tuel car and then turn back and then run out again in the crosswalk after Tuel had passed. Allen thought plaintiff was running as fast as

he could, with his head down, when hit. Allen estimated defendant's speed at about 30 miles per hour. Allen said that plaintiff was running when he was hit and that he was thrown and then slid up against or near the wheels of Allen's car.

Officer McGuire, who arrived soon after the collision to make an investigation, found four skid marks behind defendant's car, ranging from 40 to 54 feet in length, varying with the wheels. He took a statement from plaintiff's brother who was with plaintiff at the time that "after auto went by they started running across Glisan and he observed auto coming at them and he stopped and yelled for Raymond to stop, but Raymond did not hear him." Later the officer corrected his statement to show that by "Raymond" he meant plaintiff.

Plaintiff testified that he was running across the street to get some balloons from a filling station. He said, "My brother was trying to pull me back, and the car came and hit me." Plaintiff remembered nothing else.

Mrs. Alder, mother of plaintiff, said that plaintiff had on a white sport shirt with some colored figures in the background.

Her home was not far from the scene of the collision and she thought she had heard glass hit the pavement.

Viewing the charges of negligence against defendant in the order set forth in the complaint in the light of the evidence, we find:

1. No evidence of failure to keep a lookout. Plaintiff ran out fast into the street from behind one moving vehicle and in front of another and it appears that defendant saw plaintiff as soon as it was reasonably possible to have seen a pedestrian

under the circumstances. It appears probable that the eastbound traffic effectively blocked defendant's vision toward the south curb, and there appears nothing to have put defendant on notice that children or other pedestrians would be or were running into the street;

2. That any control defendant could have exercised toward averting the collision under the circumstances shown is speculative;

3. That the posted speed at this location was 35 miles per hour. The highest estimate of defendant's speed was 30 miles per hour;

4. That it is apparent defendant made a reasonable effort to stop, and there was no opportunity to have yielded the right of way to plaintiff.

It is unnecessary to decide whether a child of plaintiff's age is capable of committing a negligent act. The situation presented, whether it arose from plaintiff's negligence or mere lack of capacity to understand the danger, fails to establish negligence on the part of defendant. Defendant was entitled to have had his motion for a directed verdict in his favor allowed.

Affirmed.