Argued November 2, affirmed December 14, 1960

# JOHNSON *v.* BENNETT

357 P. 2d 527

*Wendell Gronso,* Burns, argued the cause for appellant. On the briefs were Cramer & Gronso, Burns.

*Winfrid K. Liepe,* Portland, argued the cause for respondent. On the brief were Maguire, Shields, Morrison, Bailey & Kester, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is an action for personal injuries sustained by the plaintiff, who was struck by defendant's car as he was crossing the street between intersections in Burns, Oregon. The jury returned a verdict for the defendant, and plaintiff brings this appeal.

At about 11 o'clock p.m., June 7, 1957, the plaintiff, Roy Johnson, accompanied by Louis Griggs, was walking diagonally across Monroe street, in Burns, Oregon. They started from the plaintiff's automobile and garage business near the northeast corner of the block at the intersection of Buena Vista avenue and Monroe street and walked in an almost straight line diagonally towards a drive-in cafe located on the southwest intersection of Monroe and Court streets.

Monroe street, which is also called Oregon State Highway No. 395 and United States Highway No. 20, runs approximately east and west and at the west end of the 200 block is intersected by Court avenue, running approximately north and south, and at the east end of said 200 block is intersected by Buena Vista avenue, which also extends north and south.

There were marked crosswalks across Monroe street at both the north and south ends of the 200

block. Vapor street lights were installed at each of the intersections.

When the plaintiff stepped off the curb, he noticed some cars coming from the west on Monroe street, a block or more away. He also saw the lights of defendant's car approaching from the east and down the same side of the street the plaintiff was on and a block or more away.

The plaintiff and Mr. Griggs were walking shoulder to shoulder and when they were about 108 feet from the northeast corner of the block and facing southwest, they stopped to allow the cars coming from the west to pass. Mr. Griggs was on or very close to the yellow center line of the street, and plaintiff was approximately 1½ feet from the yellow line on the north side, by reason of the fact that they were walking shoulder to shoulder but diagonally across the street, while the yellow line ran straight with the street.

About the same time that the first car from the west passed in front of the plaintiff and Mr. Griggs, the defendant's car, coming from the east, struck the plaintiff, breaking his leg and causing some other lesser injuries.

At the close of plaintiff's case the defendant moved for a nonsuit, which was denied. At the close of all the testimony the defendant moved for a directed verdict, which was also denied. The case was submitted to the jury and, as before mentioned, the verdict was for the defendant.

The plaintiff contends that certain instructions given the jury were improper and that all of his allegations of negligence should have been submitted to the jury. The defendant, in addition to taking the opposite stand on plaintiff's assignment of error,

urges that nonsuit and directed verdict should have been granted.

The plaintiff sets forth nine assignments of error. Instead of taking them up in the order listed, we will consider the claimed improper instructions first.

■ Assignment of error No. 4 was based on the court's failure to give the requested instruction as follows:

"The law does not prohibit a pedestrian from crossing a street or highway at the point that Mr. Johnson was crossing in this case. However, every pedestrian crossing a roadway at any place other than within a marked or unmarked crosswalk shall yield the right-of-way to vehicles upon the roadways, but this law does not relieve the driver of a vehicle or a pedestrian from the duty to exercise due care.

"*It is not negligent for a pedestrian to go across the street other than at an intersection or a regular crossing.* In crossing a street between intersections, a pedestrian must exercise that care which an ordinary, prudent person would exercise in making a similar attempt, and to use care commensurate with the danger arising from the fact that drivers of vehicles may anticipate less travel on street [sic] at such places." (Emphasis supplied.)

The main fault in the above instruction is in italics. A pedestrian crossing between marked crosswalks may or may not be negligent, depending on the other conditions, actions and circumstances.

The court in its instructions properly covered all the requested instruction that should have been given.

■ Plaintiff's assignment of error No. 5 was the failure of the court to give plaintiff's requested instruction No. 4.

Without setting the request out in detail, we point out the court did give the first two paragraphs thereof.

The part not given reads as follows:

"A person driving an automobile is driving a machine capable of doing great damage, if not handled in a careful and prudent manner, therefore, it takes more care on the part of the driver of an automobile to amount to reasonable care in the situation than is required of a pedestrian crossing a street or highway."

This court in *Cederoth v. Cowles,* 224 Or 403, 356 P2d 542, which was decided after the trial of the case at bar, held that failure to give the above instruction was not error. We adhere to that decision. *Cline v. Bush,* 152 Or 63, 52 P2d 652; *Bracht v. Palace Laundry Co.,* 156 Or 151, 159, 65 P2d 1039; *Sherrard v. Werline,* 162 Or 135, 162, 91 P2d 344; *Larkins v. Utah Copper Co.,* 169 Or 499, 512, 127 P2d 354.

■ Assignment of error No. 6 was failure of the court to give the following requested instruction:

"Where a driver's vision is obstructed by blinding lights of another automobile, he is not relieved of his duty to exercise reasonable care for pedestrians and he may be obliged to stop or to slow down as circumstances might dictate even though he is not aware of the presence of a pedestrian and it is your duty as members of the jury to determine whether or not a reasonable and prudent person under the same circumstances would stop or slow down, taking into consideration that pedestrians have a right to cross the street at that particular place and the vision that the driver might have had at that particular place and the vision that the driver might have had at that particular time."

It was not error to fail to give the above instruction. Among other things, it leaves out entirely the duty of the pedestrian to yield the right of way outside of crosswalks and gives the impression that the pedestrian had an absolute right of way at that particular point. It was covered in proper manner by the court in other instructions.

■ Assignment No. 7 is failure to give the following instruction:

> "In passing a pedestrian on the highway the motorist must take care not to injure him and having ample space to pass him must keep out of his way and not drive so close that a slight deviation by the pedestrian will cause an accident."

This instruction is abstract. It could be construed to indicate that the motorist intentionally drove as close to the pedestrian as possible, and again it leaves out of consideration the duties so far as yielding right of way are concerned and places an absolute duty on the motorist to know at all times where the pedestrian is and what he might do. The trial court fully covered the duties of both the plaintiff and the defendant in its instructions.

■ Assignment of error No. 8 is based on failure to give the following request:

> "The driver of a motor vehicle must anticipate the presence of other persons on the highway. He must be alert and keep a proper lookout for them, in the performance of his duty, to exercise ordinary care. When the view of the driver is obstructed, it is his duty to see pedestrians on the highway in front of him and he is chargeable with the knowledge of what a prudent and vigilant driver would have seen. A motorist who looks without seeing a pedestrian who is in plain sight is as negligent as if he did not look at all."

Again, this instruction contains many statements that are abstract. For instance, the last sentence of the instruction assumes or at least indicates that the plaintiff was in plain sight of the defendant, when the facts of the case from which the jury must decide could be construed in the opposite manner.

The trial court fully covered the duties of the defendant driver as to lookout, control and instructed "that he has no right to assume that the road is clear, but under all the circumstances and at all times must be vigilant and expect the presence of others."

■ The plaintiff, as his assignment of error No. 9, objects to an instruction given by the court on sudden emergency. We will not set the instruction out in full here; suffice it to say it was proper as given and fully complied with the requirements of a sudden emergency instruction. *Goebel v. Vaught,* 126 Or 332, 336, 269 P 491; *Prauss v. Adamski,* 195 Or 1, 244 P2d 598; *Tuite v. Union Pacific Stages et al.,* 204 Or 565, 595, 284 P2d 333; *Hall v. Tams,* 219 Or 263, 346 P2d 1115.

■ Assignment of error No. 1 was that the court erred in overruling objections to a question to witness Robinson on cross-examination as follows:

"Q   Has anybody, as you drove that car, ever blinked their lights when you have your lights on dim, in an effort to try to get you to dim them?

"MR. GRONSO: I object to that as being completely beyond the scope of cross-examination, your Honor. What somebody else might have done has no probative value in this case.

"THE COURT: The objection will be overruled."

Mr. Robinson was the driver of the first car coming in the opposite direction. He had been asked this question on direct examination by the plaintiff:

"Q Do you know whether or not he blinked his lights at you at any time?

"A No, I don't think he did."

The witness had also testified that the rear of his car had been lowered about three inches by putting blocks between the springs and the axle housing. That, in turn, would cause the beam of his lights to shoot higher than normal and might tend to bother other drivers, including the defendant.

We think the question and answer were harmless and that the matter was invited by the plaintiff on direct examination.

Assignment of error No. 3 was based on the court's ruling which took from the jury the allegation of negligence based on defendant's alleged failure "to drive as close as practicable to the right hand edge or curb of said highway."

ORS 483.302(2) reads as follows:

"(2) In driving upon the right half of a highway the driver shall drive as close as practicable to the right-hand edge or curb of the highway except when:

"(a) Overtaking or passing another vehicle;

"(b) Placing a vehicle in position to make a left turn; or * * *."

This court in *Hamilton v. Finch*, 166 Or 156, 171, 109 P2d 852, 111 P2d 81, speaking through Mr. Justice Lusk and interpreting this same statute, says:

"We think the point is without merit, both because the complaint contains no allegation which may fairly be said to charge a violation of the

quoted statute *and because the statute was not enacted for the protection of pedestrians but for the regulation of vehicular traffic.* See, *Hartley v. Berg,* 145 Or. 44, 53, 25 P. (2d) 932; *Weinstein v. Wheeler,* 135 Or. 518, 529, 295 P. 196, 296 P. 1079; *Yarbrough v. Carlson,* 102 Or. 422, 427, 202 P. 739." (Emphasis supplied.)

The case of *Falls v. Mortensen,* 207 Or 130, 158, 295 P2d 182, involved a pedestrian hit on the left side of the street by a drunken driver, and the complaint alleged driving and operating the automobile on the wrong half of the highway. In that case giving an instruction based on the law requiring driving as near as practicable to the right edge of the highway was held not reversible, but the court pointed out that there was no exception to that particular part of the instruction.

The court also said in *Falls v. Mortensen,* supra:

"* * * We agree that the primary purpose of the statute was to provide ample clearance for cars proceeding in opposite directions when passing. * * *

"We do not construe the instruction given as applying the rule of negligence per se."

■ In addition to the fact that the statute was enacted to apply to automobiles rather than pedestrians, there was nothing proved or shown in this case to exclude exception (b), "Placing a vehicle in position to make a left turn." If the defendant was intending to make a left turn at the next intersection, the law required him to drive as near as practicable to the center line. ORS 483.316(1)(b). *Hartley v. Berg,* supra.

■ The trial court properly removed that allegation of negligence from the jury.

Plaintiff's assignment of error No. 2, that the trial court erred in striking from the complaint the allegation charging the defendant with excessive speed, and defendant's claim that nonsuit and directed verdict should have been granted are yet to be considered.

At the close of plaintiff's case, after nonsuit had been denied, the court removed plaintiff's allegation claiming speed as negligence. At that time the only eyewitnesses to the accident who had testified were Mr. Griggs and the plaintiff.

Mr. Griggs testified on cross-examination regarding speed as follows:

"Q   How fast was this car traveling?

"A   It wasn't going too fast. I couldn't estimate the speed.

"Q   Quite slow, as a matter of fact, wasn't it?

"A   I think a reasonable speed.

"Q   It stopped very quickly, didn't it?

"A   It did."

The plaintiff, Roy Johnson, after testifying that he saw cars or lights of cars coming from both directions and about the same distance away, testified on cross-examination as follows:

"Q   You never saw Dene Bennett's car from the time you left the curb, as I understand it?

"A   That's right.

"Q   You never looked back again to the east?

"A   No.

"Q   And if you had stepped one step straight ahead, or two feet straight ahead, you wouldn't have been hit by his car, would you?

"A   That's right.

"Q Actually, six inches would have cleared you wouldn't it, according to the way you were hit?

"A Approximately, yes.

"Q So that if you had ever seen his car coming you could have moved out of his way very comfortably and still not have been near the path of the other car, according to your statement?

"A That's right.

"Q Did you notice, Roy, how fast Dene's car was coming?

"A No, I didn't.

"* * * * * *

"Q Could you tell how fast Dene Bennett was coming?

"A No.

"Q Did there appear to be anything unusual about the way his car was traveling when you saw it?

"A No."

Officer Ragsdale, who investigated the accident and was called by the plaintiff, testified that he found nothing to indicate a traffic violation. He testified that skid marks of 24 feet showed from the left wheels and 35 feet for the right wheels.

■ The above is all the testimony regarding speed of defendant's car at the conclusion of plaintiff's case and when the court first ordered the allegation stricken. There was no substantial evidence of speed at that time. However, the defendant did not rest his case at that time, and the plaintiff was entitled to the benefit of any evidence of speed, if any, produced in defendant's defense. *Ridley v. Portland Taxicab Co.*, 90 Or 529, 177 P 429; *Bunnell v. Parelius*, 166 Or 174, 111 P2d 88; *Portland Postal*

*Emp. Union v. U. S. Nat. Bank,* 171 Or 40, 135 P2d 467, 136 P2d 259.

The defendant testified on direct examination as follows:

"Q How fast would you say you were going just prior to the time that you saw Roy?
"A Oh, about 20. I wasn't over 25. I would say 20."

On cross-examination the defendant testified as to his speed when he first saw plaintiff, as follows:

"Q How fast were you traveling?
"A Oh, between 20 and 25."

This was the extent of the entire testimony regarding speed. The defendant's car stopped right at the scene of the accident and remained there until after investigation by the officers.

■ Ordinarily the question of speed and violation of the "Basic Rule" is left to the jury. This is particularly true in intersection cases and where other cars legally on the highway are struck. *Rauw v. Huling and Sparks,* 199 Or 48, 259 P2d 99; *McMullen v. Robinson,* 211 Or 531, 316 P2d 503; *McReynolds v. Howland,* 218 Or 566, 346 P2d 127.

In *Lemons et al. v. Holland et al.,* 205 Or 163, 284 P2d 1041, 286 P2d 656, speaking of driving in a country district with no intersecting streets, Justice Tooze said:

"* * * She was not required to anticipate negligence on the part of any other person and had the right to assume until she had notice to the contrary or in the exercise of due care on her part should and would have known to the contrary, that all other persons using the highway would exercise due care and obey the law. *Walker v. Penner,*

190 Or 542, 227 P2d 316. * * * The defendant, while operating her car, could not reasonably be expected, nor was she required, to anticipate that any pedestrian would be in any but his own proper place on the road, or that he would fail to yield the right of way. * * * When all is said and done, the paved portion of the highway, except at cross-walks, is designed primarily for the use of vehicles. That is why we have definite statutory rules as to cross-walks and rights-of-way."

In the above case it was held that 55 miles per hour, and skid marks showing for 210 feet, was not a violation of the Basic Rule. That was a case on an open highway, however.

In *Simpson v. Hillman,* 163 Or 357, 97 P2d 527, it was held that where a car struck a child 3½ years of age while traveling 12 to 14 miles per hour between intersections there was not sufficient proof of unreasonable speed.

In *Hamilton v. Finch,* supra, a case very similar to this in many respects, it was held that speed of 20 to 25 miles per hour under the circumstances was not excessive, and a verdict for the plaintiff was reversed.

In *Alder v. O'Conner,* 221 Or 615, 351 P2d 950, this court held that speed of 30 miles per hour in a 35 mile zone was not negligent. In that case defendant's vision was obstructed by other cars. He struck the plaintiff who was about six years of age, the plaintiff having unexpectedly run out into the dimly lighted cross walk.

The plaintiff cites a number of Oregon cases to sustain his position. In *Burnett v. Weinstein,* 154 Or 308, 59 P2d 258, the plaintiff was driving north on Pacific Highway, north of Vancouver, Washington. The defendant, in a Ford truck, was crossing the

highway to the west side thereof. The collision occurred near the center of the pavement of the two-way highway. The plaintiff contended that the defendant had first started to turn right and then had swung back and turned left in front of plaintiff's car without giving a signal. The decision seemed to be based primarily on the question of whether there was contributory negligence. However, the court did say:

"We see no error in the contention that the court erred in instructing as an abstract proposition of law that 'It was incumbent upon the defendant to at all times have his automobile under reasonable control'. Keeping a car under proper control implies that it will be driven with a degree of care commensurate with the danger involved. The mere fact that defendant was traveling not in excess of five miles an hour when struck does not necessarily absolve him from the charge of negligence. Under some circumstances it is negligent to move a car at all."

The instruction this court was considering referred to reasonable control of the defendant's automobile. It is pointed out that a driver might be negligent although not driving in excess of 5 miles per hour, and under some circumstances it is negligent to move a car at all. As an example, it might be negligent to back out of a garage at 2 miles per hour, depending on the attendant circumstances but it would not be excessive speed.

We do not believe that *Burnett v. Weinstein,* supra, was intended to be, or is a holding that in every case where speed is alleged and forward movement in miles per hour of the car is shown, that the question of speed as negligence must be submitted to the jury. As above mentioned, it would depend on the other attendant facts proven, such as "lookout," in connection with the rate of movement.

*McMullen v. Robinson,* supra, and *Bailey v. Rhodes, Adm.,* 202 Or 511, 276 P2d 713, hold that the question is "whether the rate of travel was excessive under all the facts, circumstances and conditions existing at the time." The former cites *Burnett v. Weinstein,* supra. Neither of them indicate or hold that all cases of alleged negligence on account of speed must be submitted to the jury.

*Nicholas v. Fennell,* 184 Or 541, 199 P2d 905, is a case where the jury found for the defendant. The plaintiff appealed because the trial court failed to take the following charges of contributory negligence from the jury: (a) excessive speed; (b) failure to maintain a lookout; and (c) failure to have his car under control.

In that case the plaintiff was following defendant's car, late at night, on the Santiam Highway. The defendant's car and one driven by Mr. Elliott, coming in the opposite direction, collided. The Elliott car then crashed into the plaintiff's car. The plaintiff contended the defendant caused the Elliott car to go out of control and strike him.

The testimony in the case showed the plaintiff was traveling 45 to 50 miles per hour. He was following closely, and saw the tail lights of the defendant's car for a long time. He also saw the lights of the approaching Elliott car. He failed entirely to see or hear the collision between the Elliott car and defendant's car, although it took place directly in front of him and must have made an enormous noise. He apparently was adjusting and listening to his radio and took his eyes and attention off the road.

In that case, page 551, Mr. Justice ROSSMAN said:

"The duties of a motorist to drive at a reasonable rate of speed, to maintain an adequate look-

out and to keep his car under control are inter-related and mutually dependent. Unless a change takes place in the other attendant circumstances, a variation of the rate of speed, normally, has a concurrent effect upon the duties of control and lookout. Likewise, a relaxation in control or look-out should be accompanied by a reduction in the rate of speed. The greater the speed, the less is the control; the less control, the more is the neces-sity for a sharp lookout.

"* * * * *

"If the plaintiff's lookout was relaxed—and a finding to that effect, in our opinion, was war-ranted—an inference was also warranted that his speed should have been reduced or that in some other manner he should have brought his car under greater control."

That case could hardly be construed as holding that the charge of speed as negligence must be sub-mitted to the jury in every case. In fact, the writer of the above decision also was the author of *Cameron v. Goree,* 182 Or 581, 189 P2d 596, where speed of 50 miles per hour was held not negligent, and he distinguished the two cases as follows:

"* * * The difference between the facts of that case and those now before us consists in this: in the Cameron case the motorist upon the through highway was maintaining an adequate lookout, while in this case a finding was warranted that the plaintiff had relaxed his lookout." *Nicholas v. Fennell,* supra, p 554.

*McReynolds v. Howland,* supra, holds that without a proper lookout, any speed may be excessive. It cites the above quotations from *Nicholas v. Fennell,* supra, but does not hold that in every case speed must be submitted to the jury.

In the case at bar, we have already quoted all the testimony regarding speed in miles per hour of de-

fendant's car on the throughway street. Let us now see if there was any proof of failure of lookout.

■ The mere fact that a collision occurred is not evidence of lookout, speed or lack of control. *Mead v. Portland Traction Co.,* 210 Or 643, 313 P2d 451; *Navarra v. Jones,* 178 Or 683, 169 P2d 584; *McReynolds v. Howland,* supra.

The defendant on direct examination testified:

"Q Before you saw Roy were you looking at the highway in front of you?
"A Yes.

"Q Did you take your eyes off the highway for any reason? Were you looking anywhere else before this accident occurred?
"A No."

On cross examination the defendant testified as follows:

"Q Were you looking ahead as you traveled down there?
"A Yes.

"Q Did you look down along your own side of the street, along Johnson Pontiac, as you were approaching that area?
"A Yes."

There was absolutely no testimony that the defendant was doing anything to prevent him from keeping, or to indicate that he was not keeping, a proper lookout.

The testimony of the drivers of two of the cars coming from the opposite direction was that they did not see the plaintiff until they were almost to the position where he was standing and almost at the instant he was struck by the defendant's car. It could be assumed from the testimony that the plaintiff was

near the center line and out of the direct beam of the lights of any of the cars.

We also have this testimony from the defendant on direct examination as to what happened:

"Q Did he do anything just as you saw him, Dene?

"A Well, it looked to me like he stepped back into my car."

On cross examination the defendant testified:

"Q As a matter of fact, you didn't see Mr. Johnson move at all in that split second that you saw him, did you?

"A No, he didn't move. He stepped back into my car, as I recall.

"Q The first movement you actually saw of him was coming over your fender, isn't that right?

"A Well, I seen him before that.

"Q Which direction did he step?

"A He stepped north with his right leg."

The plaintiff on cross examination testified as follows:

"Q You said that you were almost sure you didn't step back, but you have never said absolutely that you didn't step back, Roy. What is the fact on that?

"A I don't think I ever stepped back.

"Q But you are not positive?

"A I'm not really positive, but I don't think I ever did step back."

■ We hold that it was not reversible error to take the allegation of negligence regarding speed from the jury in this case, especially in view of the fact that the allegations regarding lookout and control of defendant's automobile were properly submitted to

the jury. The jury was instructed that the rule of speed and stopping celerity should be considered in determining control. The effect of taking the allegation of negligence regarding speed from the jury was that the jury could not find defendant guilty of negligence per se in that regard. We are not unmindful of the fact that there is no "jay-walking" statute in Burns and that it was not unlawful for the plaintiff to cross the street between intersections. Under the facts of this case, speed could not have been negligence as a matter of law.

Evidence of contributory negligence was exceptionally strong in this case, but it is usually a jury question and it was properly submitted and directed verdict was rightfully denied. *Clark v. Strain et al.*, 212 Or 357, 319 P2d 940; *Bockman v. Mitchell Bros. Truck Lines*, 213 Or 88, 320 P2d 266; *Loibl v. Niemi*, 214 Or 172, 327 P2d 786.

Considering all the evidence, the instructions, exceptions and assignments of error, we believe the jury properly determined the case and its verdict should stand.

Affirmed.